**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| GCM PARTNERS, LLC, an Illinois limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>HIPAALINE LTD., a limited company of England and Wales, and EMILY ARIDA FISHER,<br><br>Defendants. | ) | Civil Action No. 1:20-cv-06401<br><br>JURY TRIAL DEMANDED |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF THE EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER**

Due to Defendants' contractual breaches, tortious actions rooted in bad faith, and statutory malfeasance, entry of a temporary restraining order is an immediate necessity. Without a temporary restraining order, Defendants will disable GCM Partners' access to the Leafwell software platform on November 1, 2020, which will result in a catastrophic interruption in service to GCM Partners' patients; the loss of Confidential Information, patient data, and trade secrets; and an immeasurable loss in revenues and profits to GCM Partners that will effectively cripple GCM Partners irreparably.

To prevent such irreparable harm, GCM Partners respectfully requests that this Court enter a temporary restraining order (a) enjoining Defendant Hipaaline and Defendant Fisher from disabling, suspending, and otherwise removing GCM Partners' access to the Leafwell software platform and its related Confidential Information and trade secrets, (b) enjoining Defendants from replacing GCM Partners' third-party payment processor, Bluepay, with Defendant Hipaaline's own payment processor and collecting patient payments, and (c) requiring Defendants to comply with the terms of the Agreement (as defined below), pending a preliminary injunction hearing.

GCM Partners submits the following memorandum of law in support of its emergency motion for temporary restraining order.

**FACTS**

GCM Partners is a state-of-the-art company that originally operated brick-and-mortar medical clinics to treat patients via state-sanctioned medical cannabis programs. Effective October 1, 2019, GCM Partners and Defendant Hipaaline entered into an Exclusive Marketing and Consultant Services Agreement (the "Agreement"), whereby Defendant Hipaaline agreed to provide a software platform to GCM Partners that facilitated virtual physician-patient visits over the internet (i.e., telehealth). In consultation with Defendants, GCM Partners subsequently expanded its business to include the provision of telehealth services through use of Defendant Hipaaline's domain name www.leafwell.co.

On October 23, 2020, GCM Partners learned that Defendants intend to completely remove its access to www.leafwell.co on November 1, 2020, without any legal basis, justification, or authorization, in breach of the Agreement, in violation of the Computer Fraud and Abuse Act, and in violation of the Defend Trade Secrets Act. Such action by the Defendants would cause catastrophic loss and irreparable harm to GCM Partners and its patients, who would undoubtedly suffer an interruption in service in the midst of a global pandemic when patients are relying more heavily on telehealth medicine than ever before. GCM Partners' patients, partners, and independent contractors (i.e., doctors) rely on the software platform on a near-continuous basis to conduct business, process patient orders, and fulfill patient needs.

## ARGUMENT

### I. Legal Standard

A temporary restraining order ("TRO") is issued to minimize the hardship to the plaintiff until a hearing on a preliminary injunction can be held. *See Crue v. Aiken*, 137 F. Supp. 2d 1076, 1082 (C.D. Ill. 2001) (citing *Faheem–El v. Klincar,* 841 F.2d 712, 717 (7th Cir. 1988). The standard for granting or denying a TRO is governed by federal procedural law. *See* FED. R. CIV. P. 65; *Gen. Elec. Co. v. Am. Wholesale Co.*, 235 F.2d 606, 608 (7th Cir. 1956) ("The propriety of the issuance of a preliminary injunction, of course, is to be determined by the rules and decisions of federal courts."). The standard for issuing a TRO is identical to the standard for a preliminary injunction. *Crue*, 137 F. Supp. 2d at 1082-83.

To obtain a TRO, GCM Partners needs to show "(1) its case has a likelihood of success on the merits; (2) no adequate remedy at law exists; and (3) it will suffer irreparable harm if the injunction is not granted." *Foodcomm Int'l v. Barry*, 328 F.3d 300, 303 (7th Cir. 2003). To establish a likelihood of success, GCM Partners must only demonstrate "some likelihood of success and that its chances are better than negligible." *International Profit Assoc., Inc. v. Paisola*, 461 F. Supp. 2d 672, 676 (N.D. Ill. 2006) (citation and quotations omitted). A "sliding scale approach" is then used to balance the harms, "whereby the likelihood of success on the merits and the balance of irreparable harms are inversely proportional." *In re Ameriquest Mortgage Co.*, No. 05 CV 7079, 2006 WL 1525661, at *2 (N.D. Ill. May 30, 2006). The more likely a plaintiff's success on the merits, the less the balance of harms needs to favor its side to justify relief, while a greater showing that the balance of harms favors the plaintiff may offset a lower probability of success on the success." *Aon Risk Servs. Companies, Inc. v. Alliant Ins. Servs., Inc.*, 415 F. Supp.

3d 843, 847 (N.D. Ill. 2019). Here, the facts demonstrate that the elements for issuance of an injunction have been satisfied and that a TRO should be issued against the Defendants in this case.

## II. GCM Partners Is Likely To Succeed on the Merits

A plaintiff seeking a TRO is considered to have a likelihood of success on the merits if "the plaintiff's chances are better than negligible." *Brunswick Corp. v. Jones, Jr.*, 784 F.2d 271, 275 (7th Cir. 1986) ("Although the plaintiff must demonstrate some probability of success on the merits, 'the threshold is low.' It is enough that 'the plaintiff's chances are better than negligible....' ") (citation omitted). GCM Partners' likelihood of success on the merits is significant.

GCM Partners is likely to succeed on the merits because Defendants' misconduct and threats amount to actual and anticipatory breaches of the Agreement, violations of the Computer Fraud and Abuse Act, and violations of the Defend Trade Secrets Act. GCM Partners is also likely to succeed on the merits given that Defendants' threat to disable GCM Partners' access to the Leafwell platform was rooted in bad faith and is otherwise devoid of any legal basis, justification, or authorization.

### A. GCM Partners is Likely to Succeed on its Breach of Contract Claims Because Defendant Hipaaline Has Actually and Anticipatorily Breached the Agreement.

Under Illinois law, to establish a cause of action for breach of contract, a plaintiff must allege "(1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of the contract by the defendant; and (4) resultant injury to the plaintiff." *Ewert v. Drexel Nat. Bank*, 271 Ill. App. 3d 1124, 1129 (1st Dist. 1995); *see also Orthofix v. Gordon*, No. 13-cv-1463, 2014 WL 12634898, at *2 (C.D. Ill. Jan. 13, 2014). GCM Partners has satisfied all four elements.

The Agreement between Defendant Hipaaline and GCM Partners is a valid and enforceable contract. GCM Partners has complied with all of the terms of the Agreement. Additionally, as

outlined in the Complaint and the affidavits submitted therewith, Defendant Hipaaline has actually and anticipatorily breached the Agreement by:

- Clearly and positively indicating that it would breach Section 5.8(a) and 5.8(c) of the Agreement by prematurely disabling, suspending, or otherwise removing GCM Partners' access to the Leafwell platform without any legal basis, justification, or authorization on November 1, 2020;

- Clearly and positively indicating that Defendants have vetted new third-party payment processors and will remove the current third-party payment processor GCM Partners uses to collect and hold payments from patients via the Leafwell telehealth platform in violation of Section 3.3 of the Agreement;

- Employing and engaging physicians and other health care providers to promote or utilize its telehealth platform even through such physicians are not employees or independent contractors of GCM Partners in violation of Section 5.6 of the Agreement; and

- Wrongfully and pretextually attempting to terminate the Agreement for convenience and selfish gain, in violation of Section 6.2 of the Agreement.

*See* Complaint for Injunctive and Other Relief, Dkt. No. 1 ("Compl.") ¶¶ 98, 158, 165, 180-180; *see also* **Exhibit 1**, Affidavit of Jonathan M. Mraunac ("Mraunac Aff.") ¶¶ 5-6; *see also* **Exhibit 2**, Affidavit of Dr. George Gavrilos, Pharm.D., M.A. ("Gavrilos Aff.") at ¶¶ 76, 84, 95 103, 109, 112.)

Finally, Defendant Hipaaline's contractual breaches have and will continue to cause GCM Partners irreparable harm, as detailed below. As a result, GCM Partners is likely to succeed on the merits of its contractual claims against Defendant Hipaaline. *See, e.g., Aon*, 415 F. Supp. 3d at 851 (granting request for injunctive relief on breach of contract claim where the plaintiff demonstrated "at least a negligible chance of success of the merits.").

### B. GCM Partners is Likely to Succeed on the Computer Fraud and Abuse Act Claim

Any person who suffers damage or loss by reason of a violation of the Computer Fraud and Abuse Act ("CFAA") may maintain a civil action against the violator to obtain compensatory

damages and injunctive relief or other equitable relief. *See* 18 U.S.C. § 1030(g). To bring a civil action under the CFAA, a plaintiff must show a violation of one of the CFAA's substantive provisions, as set forth in section 1030(a), and allege the existence of at least one of the factors set forth in subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i). *See* 18 U.S.C. § 1030(g); *Patrick Patterson Custom Homes, Inc. v. Bach*, 586 F. Supp. 2d 1026, 1032 (N.D. Ill. 2008). A plaintiff must also allege and prove that "(1) that Defendant used a 'protected computer'; (2) that Defendant's conduct involved an interstate or foreign communication; and (3) that Plaintiffs suffered losses recoverable under the Act." *Id*. GCM Partners has alleged facts sufficient to satisfy each of these requirements and succeed on the merits of its CFAA claim against Defendants.

GCM Partners has alleged that Defendants violated one of the CFAA's substantive provisions, namely 18 U.S.C. § 1030(a)(7), by transmitting a communication to GCM Partners that contained a daunting ultimatum that effectively holds GCM hostage – either agree to terminate the Agreement and settle this dispute on unfavorable terms, or Defendants will single-handedly destroy GCM Partners' telehealth business by (1) disabling its access to Leafwell and any Confidential Information and patient data stored on the Leafwell platform, and (2) interrupting service for all of GCM Partners' patients. (Compl. at ¶ 139, 147; Gavrilos Aff. ¶¶ 84, 103.) GCM Partners has also alleged the existence of one of the four elements in subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i) by stating that the loss to GCM Partners due to Defendants' CFAA violation is at least $5,000 in value. (*See, e.g.*, Compl. at ¶¶ 149-152.)

Next, GCM Partners has shown that the Defendants have threatened to use a protected computer to cause damage to GCM Partners' protected computer, and that such misconduct by the Defendants involved interstate and foreign communication. "The CFAA defines a 'protected computer' as a computer used exclusively (A) by the federal government or a financial institution

or (B) one that 'is used in interstate or foreign commerce or communication ....'" *Patrick*, 586 F. Supp. 2d at 1032. "This is not difficult to allege. Indeed, it suffices to state the computer was used for the business and the business operated in two different states." *Id.* "A computer used in conjunction with a business' efforts to conduct sales across state lines qualifies as a protected computer." *Id.* "In addition, a computer that provides access to worldwide communications through applications accessible through the internet qualifies as a protected computer." *Id.*

Here, the allegations that GCM Partners is engaging in the provision of telehealth services in 21 states across the United States of America is sufficient to establish that their computers (and those of their executives, staff, and medical providers) are in fact protected computers. (Compl. at ¶¶ 23, 141; Gavrilos Aff. at ¶ 11.) Similarly, the allegations that Defendants are residents of a foreign state providing internet-based marketing and consulting services to GCM Partners, which provides telehealth services across the country, illustrate that the computers used by Defendants are protected computers used in interstate and foreign commerce. (Compl. at ¶ 142.)

Finally, GCM Partners has established that it has suffered damages recoverable under the CFAA. A civil action under the CFAA may only be brought if the plaintiff alleges the existence of at least one of the factors set forth in subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i), which includes "loss to one or more persons during any one-year period … aggregating at least $5,000 in value." *See* 18 U.S.C. § 1030(g). The CFAA defines "loss" as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." *Patrick*, 586 F. Supp. 2d at 1032.

In this case, GCM Partners has alleged and will prove that Defendants' actions will cause it to be temporarily unable to market to new prospective clients, permanently unable to retrieve order history, address unique patient needs, and access other patient data from the Leafwell platform after its service is disabled, thereby resulting in lost revenues, costs incurred due to an interruption in service, and costs associated with restoring or rebuilding the lost data. (Compl. at ¶ 149; Gavrilos Aff. at ¶¶ 104-109.) GCM Partners also alleged that constructing an entirely new online platform or joining a different online medical cannabis platform will take several months and hundreds of thousands of dollars due to costs associated with customizing a new platform to align with GCM Partners' business model. (Compl. at ¶¶ 151-152; Gavrilos Aff. at ¶¶ 110-111.) GCM Partners alleges that the loss resulting from such injury will exceed $75,000. These allegations satisfy the final CFAA element and are further proof that GCM Partners is likely to succeed on the merits of its CFAA claim against the Defendants. *See, e.g., Inplant Enviro-Sys. 2000 Atlanta, Inc. v. Lee,* No. 1:15-CV-0394-LMM, 2015 WL 12746702, at *3–4 (N.D. Ga. Feb. 10, 2015) ("The Court finds that Plaintiff is likely to succeed on its claims that Defendants have violated § 1030(a)(7)(C) [because] Mr. Lee sent his e-mail and letter via the internet and U.S. mail, respectively, and each communication contained a demand or request for money, and the e-mail conditioned Defendants transferring the master access to ArtUSA's domains back to ArtUSA on ArtUSA paying the allegedly un-owed $137,705.12.").

### C. GCM Partners is Likely to Succeed on the Defend Trade Secrets Act Claim

The federal Defend Trade Secrets Act ("DTSA") protects the " 'owner of a trade secret that is misappropriated . . . if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce.' " *Mission Measurement Corp. v. Blackbaud, Inc.*, No. 16 C 6003, 2016 WL 6277496, at *4 (N.D. Ill. Oct. 27, 2016) (*quoting* 18 U.S.C. § 1836(b)(1)). The DTSA defines a trade secret as:

> … all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if—(A) the owner thereof has taken reasonable measures to keep such information secret; and (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." *Mission Measurement*, 2016 WL 6277496, at *4.

GCM Partners' Confidential Information, patient data, and other information stored on the Leafwell platform contain trade secrets, as those terms are defined in the DTSA. Such protectable trade secrets and Confidential Information include, among other things, GCM Partners': (i) pricing structure of payments by GCM Partners to its medical providers, (ii) contact and licensing information of existing and prospective medical providers, (iii) revenue figures, (iv) log of patient activity on the Leafwell platform, including peak traffic hours on the platform, (v) patient data and identifying information, including, but not limited to, qualifying condition, medical records, medication history, procedural/surgical history, demographic information, geographic location, and cannabis-use history, (vi) identity of referral partner or source of lead generation, (vii) medical providers' charts and notes, (viii) medical provider activity on the Leafwell platform, and (ix) marketing and partner strategy and targets. *See, e.g.*, *Mission Measurement*, 2016 WL 6277496, at *5 (finding the disclosure of "product design, gap analysis, technical requirements, and customer lists," as well as "drawings, sketches, designs, screen mock-ups, measurement concepts and calculations, business plans, and product development plans" to be trade secrets); *Waste Services of North America, LLC v. Tibble*, 177 F. Supp. 3d 1103, 1112 (N.D. Ill. 2016) (explaining that under Illinois law "[t]rade secrets include 'customer lists that are not readily ascertainable, pricing,

distribution, and marketing plans, and sales data and marketing analysis information.' "); *see also* Compl. at ¶ 196; Gavrilos Aff. at ¶ 19.

This information was compiled by GCM Partners over multiple years and is valuable because it gives GCM Partners a strong competitive advantage in the marketplace, and GCM Partners has taken measures to protect this information against disclosure by restricting access, and requiring its vendors, independent contractors, and medical providers with access to sign confidentiality agreements. *See, e.g., IDS Fin. Serv., Inc. v. Smithson*, 843 F. Supp. 415, 418 (N.D. Ill. 1994) ("IDS has sufficiently demonstrated for purposes of a preliminary injunction that IDS derives economic value from the confidential information and that it has taken reasonable steps to preserve the confidentiality of the information."); *see also* Compl. at ¶¶ 197-200; Gavrilos Aff. at ¶ 21.

Misappropriation of trade secrets includes both the use of the knowledge of trade secrets and the transfer of the documents to portable drives. *See PepsiCo, Inc. v. Redmond*, 54 F.3d 1262, 1270 (7th Cir. 1995) (finding employee's knowledge of trade secrets could give competitor unfair advantage); *Mission Measurement*, 2016 WL 6277496, at *4 (explaining that the DTSA defines "misappropriation" as "an unconsented disclosure or use of a trade secret by one who (i) used improper means to acquire the secret. . . .") (internal quotation omitted). Defendants have clearly indicated that they plan to disable GCM Partners' access to the Leafwell platform and improperly seize and use GCM Partners' trade secrets for their own selfish benefit. (*See, e.g.*, Compl. at ¶¶ 106, 126; Gavrilos Aff. ¶¶ 84, 103.) Furthermore, Defendants' decision to engage two physicians to promote or utilize the Leafwell telehealth platform, even though neither physician is an employee or independent contractor of GCM Partners, necessarily indicates that Defendants are now engaging in direct competition with GCM Partners in violation of the Agreement, and

suggests that Defendants will improperly use GCM Partners' trade secrets to gain an unfair advantage over GCM Partners in the marketplace. (Compl. at ¶¶ 180-182.) Defendants, uniquely armed with GCM Partners' information, will misappropriate GCM Partners' trade secrets, which the confidentiality provision of the Agreement required Defendant Hipaaline to keep secret. Accordingly, GCM Partners is likely to prevail on its misappropriation of trade secrets claims.

### III. GCM Partners Will Suffer Irreparable Harm That Cannot Be Adequately Compensated By A Remedy at Law

In the absence of injunctive relief, GCM Partners' business will lose its long-standing patients and medical provider relationships, and damages cannot adequately compensate for such losses. *Foodcomm*, 328 F.3d at 304 ("Because it is not practicable to calculate damages to remedy this kind of harm, no remedy at law can adequately compensate Foodcomm for its injury."). More specifically, GCM Partners would be (i) unable to communicate with its existing and prospective patients, (ii) unable to access its Confidential Information and patient data stored on the Leafwell software platform, and (iii) left without an online platform by which to conduct telehealth services for any existing or prospective patients. (Compl. at ¶¶ 128-131; Gavrilos Aff. at ¶¶ 104-108.) Additionally, patients that rely on the GCM Partners platform and access to its physicians will suffer a disruption in service.

In addition, GCM Partners' gargantuan effort to grow and expand in the telehealth industry would be completely destroyed if Defendants elected to wrongfully disable GCM Partners' access to the Leafwell platform. (Compl. at ¶ 132; Gavrilos Aff. at ¶ 109.) GCM Partners would then be forced to either construct an entirely new online platform or join a different online medical cannabis platform – either of which would take a significant amount of time, effort, and money to construct, and would result in significant interruption to GCM Partners' operations and patient services. Both options would also result in a tremendous loss of revenue, a crippling of GCM

Partners' entire business model, and patient service interruptions, as it would take several months to customize a platform to align with GCM Partners' business model. (Compl. at ¶¶ 133-134; Gavrilos Aff. at ¶¶ 110-111.) Furthermore, there is also no guarantee that any of GCM Partners' existing patients and medical providers would agree to join a new platform selected by GCM Partners. (Compl. at ¶ 136; Gavrilos Aff. at ¶ 113.) This disruption would cause GCM Partners' patients to adopt other avenues to receive medical services, with the likely result that they would not then later return to GCM Partners. (Compl. at ¶ 137; Gavrilos Aff. at ¶ 114.) The loss and potential loss of customers, and the inability to access the Leafwell platform as a result of Defendants' anticipatory contractual and statutory violations are an irreparable harm that cannot be adequately compensated by monetary damages.

Moreover, if the Court does not issue a TRO, Defendant Hipaaline will be free to remove GCM Partners' third-party payment processor from the Leafwell platform and implement its own. (Compl. at ¶ 132; Gavrilos Aff. at ¶¶ 84, 103.) GCM Partners would then immediately be cut off from all Leafwell revenue to which it is entitled, severely crippling its ability to recover and compete in the industry. Additionally, because telehealth services in the medical-cannabis space are competitive and quickly expanding (especially during the COVID-19 pandemic), it will be difficult to predict GCM Partners' true loss of revenue. Given how rapidly its revenue has grown since March 2020, a lump-sum monetary award will certainly fail to compensate GCM Partners for the gains it stands to make in the market.

The use or potential use of GCM Partners' trade secrets and Confidential Information by Defendants also constitute irreparable harm that no remedy at law can adequately compensate. *IDS*, 843 F. Supp. at 418 ("Where trade secrets and goodwill are involved, the threat is significant that the harm experienced by the misappropriation or misuse of trade secrets will be irreparable.");

*Rugen v. Interactive Business Systems, Inc*., 864 S.W.2d 548, 551 (Tex. App. 1993) ("Injunctive relief is recognized as a proper remedy to protect confidential information and trade secrets."). The information possessed by Defendants is extremely valuable, and, if utilized by Defendants, would give them an unfair competitive advantage over GCM Partners. Defendants recognize the value and confidential nature of this information as it explicitly agreed to protect GCM Partners' Confidential Information – including its trade secrets and patient data – from disclosure in the Agreement. (Compl. at ¶¶ 30-35.) The harm that will result if the TRO is not issued is irreparable because Defendants possess Confidential Information and trade secrets about GCM Partners' business and have begun soliciting medical providers to promote or utilize the Leafwell platform, even those such physicians are not employees or independent contractors of GCM Partners, which necessarily indicates that Defendants are now engaging in direct competition with GCM Partners in violation of the Agreement. *See, e.g., Rugen*, 864 S.W.2d at 551; *see also* Compl. at ¶ 203. Therefore, GCM Partners has established that it will suffer irreparable harm to which no adequate remedy at law exists.

## IV. The Balance of Harms Support the Grant of this Emergency Motion

Defendants will not face any harm whatsoever upon issuance of a TRO in this case as the injunctive relief sought by GCM Partners will simply require Defendants to comply with the terms of the Agreement to which Defendant Hipaaline has already agreed. Moreover, with the grant of the Emergency Motion, GCM Partners and its existing and prospective patients will continue to utilize and purchase services on the Leafwell platform, which will actually benefit Defendants who receive a portion of such revenue streams.

Conversely, as outlined above, if the TRO is not issued, GCM Partners will suffer irreparable, immeasurable injury. Therefore, given that no harm would result to Defendants upon

the grant of a TRO, and GCM Partners would suffer tremendous, irreparable harm in the absence of a TRO, the balance of harms weigh in favor of granting GCM Partners' Emergency Motion.

## CONCLUSION

For the reasons stated herein and in the accompanying Emergency Motion as well as the Complaint and affidavits submitted therewith, Plaintiff GCM Partners, LLC asks this Honorable Court to enter a temporary restraining order (a) enjoining Defendants from disabling, suspending, and otherwise removing GCM Partners' access to the Leafwell software platform and its related Confidential Information and trade secrets, (b) enjoining Defendants from replacing GCM Partners' third-party payment processor, Bluepay, with Defendant Hipaaline's own payment processor and collecting patient payments, and (c) requiring Defendants to comply with the terms of the Agreement (as defined below), pending a preliminary injunction hearing in this action or until further order of the Court.

Respectfully submitted,

**GCM PARTNERS, LLC**

By: s/ *Trisha M. Rich*
One of Its Attorneys

Trisha M. Rich
Lisa M. Kpor
Holland & Knight LLP
150 N. Riverside Plaza, Suite 2700
Chicago, IL 60606
312-263-3600
Trisha.Rich@hklaw.com
Lisa.Kpor@hklaw.com

## CERTIFICATE OF SERVICE

Under penalties as provided by law pursuant to Section 1-109 of the Illinois Code of Civil Procedure, the undersigned certifies that on this 28th day of October, 2020, the foregoing **Plaintiff's Memorandum of Law in Support of The Emergency Motion for Temporary Restraining Order** was served via electronic mail upon the following counsel:

Martin B. Carroll
Fox, Swibel, Levin & Carroll, LLP
200 W. Madison Street, Suite 3000
Chicago, IL 60606
mcarroll@foxswibel.com
*Counsel for Defendant Hipaaline*

Pursuant to Section 7.3 of the Agreement, **Plaintiff's Memorandum of Law in Support of The Emergency Motion for Temporary Restraining Order** was also served via U.S. Certified Mail to the Los Angeles, California address below and via U.S. International Mail to the London, England address below on the 29th day of October, 2020:

HIPAALINE LTD
c/o Emily Fisher
3680 Wilshire Blvd., Suite 1164
Los Angeles, CA 90100

HIPAALINE LTD
c/o Emily Fisher
20-22 Wenlock Road
London, England N1 7GU

*/s/ Trisha M. Rich*