# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| GCM PARTNERS, LLC, an Illinois limited liability company, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| | ) Civil Action No. 1:20-cv-06401 |
| v. | )<br>) |
| HIPAALINE LTD., a limited company of England and Wales; EMILY ARIDA FISHER, an individual; and ONLINE MD LTD., a limited company of England and Wales | ) JURY TRIAL DEMANDED<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

## PLAINTIFF'S MOTION FOR RECONSIDERATION, FOR LEAVE TO FILE AMENDED PLEADING, AND TO MODIFY INJUNCTION

Plaintiff, GCM Partners, LLC ("GCM"), hereby moves for reconsideration of the Court's order of February 10, 2022, to request permission to file an amended pleading naming Online MD Ltd. as a defendant, and modification of the Court's injunction so it applies to Online MD Ltd. as Hipaaline Ltd.'s successor in interest.

## INTRODUCTION

On February 10, 2022, the Court issued its order ("Order") denying GCM's Renewed Motions Requesting Revision of the Court's Opinion and Order of April 19, 2021 ("Motion"). The Court deferred to the U.K. insolvency proceeding, stated that the U.K. insolvency court was the proper venue for GCM's arguments, and questioned the value of GCM's continued effort to extend successor liability to Online MD Ltd. The U.K. insolvency proceeding has now ended, and the U.S. Bankruptcy Court for the Northern District of Illinois has confirmed that its stay does not pertain to Online MD Ltd.

As this Court has recently received this matter via transfer, GCM offers the following background on the Court's procedural history and pertinent facts to provide context to its requests herein.

## BACKGROUND

**A.     The Court entered a preliminary injunction against Hipaaline.**

On November 23, 2020, Judge Sara L. Ellis, who previously presided over this matter, granted GCM's request for a temporary restraining order and preliminary injunction[1] against Defendant, Hipaaline Ltd. ("Hipaaline"), compelling its adherence to the parties' commercial agreement which is the subject of the litigation. Hipaaline complied with the injunction until February 24, 2021.

**B.     Fisher placed Hipaaline into administration, an insolvency proceeding in the United Kingdom, thereby avoiding the effect of the injunction.**

On February 24, 2021, Hipaaline, through Emily Arida Fisher, its then-CEO ("Fisher"), filed for insolvency (the U.K.'s equivalent of bankruptcy) in the United Kingdom.[2] Hipaaline and Fisher initiated the insolvency proceeding to attempt to circumvent the injunction and the federal successor-liability doctrine.[3] The insolvency filing involved Hipaaline, an entity controlled and majority owned by Fisher, selling all its assets to a newly formed entity, Online MD Ltd., an entity Fisher wholly owned and created just after the Court issued the preliminary injunction.

---

[1] A copy of Judge Ellis's order [Dkt. 026] is attached hereto as <u>Exhibit 1</u>.
[2] Copies of GCM's Emergency Motion for Issuance of Rule to Show Cause and a Finding of Contempt [Dkt. 057] and GCM's Supplement thereto [Dkt. 058] are attached hereto as <u>Exhibit 2</u>.
[3] A copy of GCM's Second Supplement in support of its Motion for Issuance of Rule to Show Cause and a Finding of Contempt [Dkt. 062] is attached hereto as <u>Exhibit 3</u>.

In conjunction with filing its second supplemental brief in support of its Motion for Issuance of Rule to Show Cause, GCM sought modification of the Court's preliminary injunction to restrain Fisher, individually and/or through any legal entity, from circumventing the injunction.[4]

**C.     The Court held evidentiary hearings and ruled on GCM's emergency motions.**

On March 19 and April 2, 2021, Judge Ellis held evidentiary hearings concerning GCM's emergency motions. On April 19, 2021, Judge Ellis issued a ruling which denied GCM's emergency motions.[5] In light thereof, Judge Ellis entered a stay protecting Hipaaline and Fisher pending the conclusion of the U.K. insolvency proceedings. [Dkt. 093].

**D.     Hipaaline's insolvency proceeding circumvented the preliminary injunction and the federal successor-liability doctrine.**

The Court's evidentiary hearings established facts concerning the insolvency proceeding. The proceeding involved Hipaaline selling all its assets to a new entity, Online MD Ltd. ("Online MD"), a transaction which closed simultaneously with the proceeding's filing (on February 24, 2021). Fisher controlled, and was the majority shareholder of, Hipaaline.[6] Fisher owned 100% of Online MD, an entity she created on December 9, 2021.[7] The insolvency filing had the effect of Online MD acquiring all of Hipaaline's assets in consideration for a purchase price of £100,000.[8] Fisher paid a down payment of £20,000.00 and agreed Online MD would make monthly payments of £8,000 until satisfying the entire purchase price.[9]

---

[4] A copy of GCM's Emergency Motion to Modify Preliminary Injunction [Dkt. 063] is attached hereto as Exhibit 4.
[5] A copy of Judge Ellis's Opinion and Order of April 19, 2021 [Dkt. 089] is attached hereto as Exhibit 5.
[6] Ex. 5, p. 3.
[7] Ex. 5, p. 7.
[8] Ex. 5, pp. 7-8.
[9] Ex. 5, p. 8.

**E.   GCM arranged an escrow account to guaranty payment to Hipaaline's creditors in the event the £100,000 purchase price was not fully satisfied in support of the renewal of its previously denied motions.**

On November 17, 2021, GCM sought to renew its motions denied on April 19, 2021, through the establishment of an escrow account intended to guaranty payment to potential Hipaaline creditors in the event Fisher and/or Online MD failed to fully pay the £100,000 purchase price.[10] GCM, relying on reports by the administrators of the Hipaaline insolvency proceeding, determined the maximum possible recovery by any Hipaaline creditor against the estate. GCM secured an escrowee in the U.K. and deposited therewith its own funds in the amount of £5,359.97 which would have covered the maximum amount of any creditor claim or claims.[11]

**F.   The Court requested a joint status report.**

On December 1, 2021, Online MD filed its response to GCM's renewed motions.[12] On December 6, the Court struck a status hearing of December 7, granted GCM until December 17 to file a reply in support of its renewed motions, requested the parties file a joint status report by February 16, 2022, and reset the status hearing to February 23 for ruling on the renewed motions.[13] GCM filed its reply in support on December 17, 2021.[14]

**G.   The Court ruled on GCM's renewed motions in advance of receiving the joint status report.**

On February 10, 2022, prior to receiving the requested joint status report, Judge Ellis denied GCM's renewed motions.[15] On February 16, the parties filed their joint status report.[16]

---

[10] A copy of GCM's Renewed Motions Requesting Revision of the Court's Opinion and Order of April 19, 2021 [Dkt. 099], is attached hereto as Exhibit 6.
[11] Ex. 6, pp. 4-5.
[12] Online MD's response brief [Dkt. 103].
[13] The Court's Notification of Docket Entry [Dkt. 104] is attached hereto as Exhibit 7.
[14] A copy of GCM's Reply in Support of its Renewed Motions Requesting Revision of the Court's Opinion and Order of April 19, 2021 [Dkt. 105], is attached hereto as Exhibit 8.
[15] A copy of Judge Ellis's Order of February 10, 2022 [Dkt. 106] is attached hereto as Exhibit 9.
[16] A copy of the Joint Status Report of February 16, 2022 [Dkt. 107] is attached hereto as Exhibit 10.

**H.     GCM moved for reconsideration of the Court's denial of its renewed motions in light of Online MD's full payment of the £100,000 purchase price.**

On March 1, 2022, GCM sought reconsideration of the Court's denial of its renewed motions.[17] The basis of GCM's motion for reconsideration was the addition of a material fact—Online MD had fully paid the £100,000 purchase price,[18] thereby ending its involvement in the insolvency proceeding and, thus, eliminating any bearing it could have on Hipaaline's estate and creditors. GCM anticipated this fact would be of record before the Court ruled on its renewed motions.[19] However, because the Court ruled prior to receiving the joint status report, it did not have the benefit of this fact.

**I.     The Court denied GCM's motion for reconsideration.**

On August 9, 2022, Judge Ellis denied GCM's motion for reconsideration.[20]

**J.     The U.K. administration ended.**

On February 7, 2023, the administrators of the U.K. insolvency proceeding filed their AM22 "Notice of move from administration to creditors' voluntary liquidation".[21] Among other things, the AM22 Notice recommend cessation of the administration. Ex. 14, pp. 8, 16. Indeed, on February 17, 2023, the administration ended.[22]

---

[17] A copy of GCM's Motion for Reconsideration of the Court's Order of February 10, 2022 [Dkt. 109], is attached hereto as Exhibit 11.
[18] Ex. 10.
[19] A copy of GCM's Reply in Support of its Motion for Reconsideration of the Court's Order of February 10, 2022 [Dkt. 114], is attached hereto as Exhibit 12.
[20] A copy of Judge Ellis's Order of August 9, 2022 [Dkt. 115] is attached hereto as Exhibit 13.
[21] A copy of the AM22 Notice is attached hereto as Exhibit 14.
[22] A copy of the U.K. Companies House entry for Hipaaline Ltd. is attached hereto as Exhibit 15.

**LEGAL STANDARD**

The federal courts have inherent authority under Rule 54(b) of the Federal Rules of Civil Procedure to reconsider interlocutory orders "at any time before entering a final judgment." *Wiegel v. Stork Craft Mfg., Inc.*, 891 F. Supp. 2d 941, 944 (N.D. Ill. 2012), citing Fed. R. Civ. Pro. 54(b). Accordingly, the Court has "discretionary authority" to reconsider a prior interlocutory order. *Galvan v. Norberg*, 678 F.3d 581, 587 (7th Cir. 2012).

The Seventh Circuit has cautioned that appropriate issues for reconsideration "rarely arise and the motion to reconsider should be equally rare." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990). Motions to reconsider are not a proper vehicle for "rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996). Rather, motions for reconsideration under Rule 54(b) "serve the limited function of correcting manifest errors of law or fact or to presenting newly discovered evidence." *Patrick v. City of Chicago*, 103 F. Supp. 3d 907, 911-12 (N.D. Ill. 2015). A party seeking reconsideration "bears a heavy burden," *Patrick*, 103 F. Supp. 3d at 912, and the decision whether to grant a motion to reconsider "is a matter squarely within the Court's discretion." *Darvosh v. Lewis*, No. 13 C 4727, 2015 WL 5445411, *3 (N.D. Ill. Sept. 11, 2015), citing *Caisse Nationale*, 90 F.3d 1264, 1270.

**ARGUMENT**

The ending of the U.K. insolvency proceeding (hereafter, the "Administration") constitutes newly discovered evidence, and the Court previously committed an error of law by granting comity to the U.K. insolvency proceeding, both of which warrant: 1) lifting the stay of April 22, 2021 (to the extent the Court ever intended it to apply to Online MD); 2) permitting GCM to file a First

Amended Complaint against Online MD as Hipaaline's successor in interest; and 3) imposing successor liability against Online MD; and 4) modification of the Court's injunction to impose against Online MD the relief previously sought and obtained against Hipaaline.

A. **The pendency of the Administration, the sole basis for entry of the Court's stay order, no longer exists.**

On April 22, 2021, the Court issued the following order:

> As stated in the Court's April 19, 2021 Opinion and Order, in light of Hipaaline's insolvency proceeding, all claims against Hipaaline and Fisher in her role as Hipaaline's officer and director are stayed. Doc. 89 at 12-14. GCM's complaint does not clearly set forth whether it asserts its claims against Fisher in her personal or official capacity, or distinguish between actions Fisher took in one capacity and the other. Given the stay on claims against Fisher in her official capacity as a Hipaaline officer and director, the Court finds it appropriate to deny the motion to dismiss 38 without prejudice to refiling after GCM clarifies the claims against Fisher *and/or the insolvency proceedings conclude and the bankruptcy stay is lifted*. The Court strikes the status hearing set for 4/28/2021 and resets it to 8/4/2021 at 9:30 a.m. with a joint status report due by 7/28/2021.

[Dkt. 093] (emphasis added). As stated above, the Administration has ended. Ex. 15.

B. **The bankruptcy stay does not apply to Online MD.**

On March 5, 2021, Hipaaline petitioned the U.S. Bankruptcy Court for the Northern District of Illinois for recognition of a foreign proceeding under Chapter 15.[23] On April 5, 2021, the Bankruptcy Court issued an order granting Hipaaline's petition.[24] Immediately upon entry of that order, an automatic stay per the Bankruptcy Code took effect. 11 U.S.C. § 1520.

---

[23] *In re Hipaaline Ltd.*, 21 B 2837 (N.D. Ill. Bankr. 2021).
[24] A copy of the Bankruptcy Court's order of April 5, 2021, is attached hereto as Exhibit 16.

On April 20, 2023, GCM moved the Bankruptcy Court to lift or modify the stay in light of the Administration's end. On June 26, 2023, the Bankruptcy Court ruled[25] on GCM's motion, in pertinent part, as follows:

> First, Online MD. GCM asks to have the stay lifted or modified so it can pursue its claims against Online MD. But this court's records show that Online MD isn't a debtor in a bankruptcy case – not in this district, at any rate. No one says it is. Only a debtor in a bankruptcy case receives the stay's protection. *Pitts v. Unarco Indus., Inc.*, 698 F.2d 313, 314-15 (7th Cir. 1983). Because Online MD isn't a debtor, there is no stay to lift or modify. As to Online MD, GCM's motion will be denied as unnecessary.

Ex. 17, p. 9, L: 6-16. The Bankruptcy Court's stay does not pertain to Online MD.

**C.  The bases for this Court's denial of GCM's request to impose successor liability against Online MD are no longer valid.**

In its order of April 19, 2021 (Ex. 5), the Court listed several factors which informed its decision to deny GCM's motion. Examining the several factors now (*Id.*, pp. 19-21), in light of the Administration's end, every reason underlying the Court's decision not to impose successor liability is invalid. GCM addresses each as follows:

**1.  Upending of competing-creditor priorities** (Ex. 5, p. 19; Ex. 9, p. 2)

Now that the Administration is over, Online MD has no further obligation to the administrators or the Hipaaline estate. It is not required to contribute anything further to the funds potentially available to potential creditors or participate in the proceeding in any way, so Online MD could rise into the Fortune 500, dissolve tomorrow, or anything in between, none of which would have any impact on Hipaaline's creditors' rights or expectations.

---

[25] A copy of the transcript of the Bankruptcy Court's proceedings of June 26, 2023, is attached hereto as Exhibit 17.

2. **The sale did not include assumption of the Agreement or Hipaaline's liabilities** (Ex. 5, p. 20; Ex. 9, p. 2)

As GCM argued previously, the fact that Online MD purchased Hipaaline's assets only, to the exclusion of its liabilities, is immaterial to a successor liability analysis [Dkt. 105, pp. 2-3]. GCM incorporates by reference that argument in support of the renewed motions. [*Id.*].

3. **The ability of GCM, as creditor, to recover in the insolvency proceeding** (Ex. 5, p. 21; Ex. 9, p. 2)

As GCM argued previously, neither GCM nor any creditor ever had a reasonable opportunity to materially recover against Hipaaline in the U.K. insolvency proceeding. [Dkt. 105, pp. 3-4]. GCM incorporates by reference that argument in support of the renewed motions. [*Id.*]. Further, the AM22 Notice reflects "[e]stimated funds available to unsecured creditors" to be £9,433, unsecured creditor claims to be in the amount of £152,729, and an "[e]stimated total (deficiency) as regards to creditors" of -£143,296. Ex. 14, p. 18.

4. **The insolvency proceeding has not "concluded"** (Ex. 5, p. 21; Ex. 9, p. 2)

As stated above, the Administration has concluded.

5. **This Court is not the appropriate venue for GCM's challenge** (Ex. 5, p. 21; Ex. 9, p. 2).

The Court has adopted the principle of comity relative to the insolvency proceeding, reflected in its discussion thereof. Ex. 5, pp. 21-22. While it is true that U.S. courts generally defer to foreign bankruptcy proceedings, the Court did not conduct a sufficient analysis to determine whether to grant comity to the U.K. proceeding. Applicable precedent reveals the Court should not have granted comity here.

The case of *Daewoo Motor America, Inc. v. General Motors Corp.*, 459 F.3d 1249 (11th Cir. 2006), endorsed by the U.S. Bankruptcy Court for the Northern District of Illinois,[26] involved

---

[26] *In re Ace Track Co., Ltd.*, 556 B.R. 887, 908 (N.D. Ill. 2016).

the impact of a Korean bankruptcy proceeding on claims by Daewoo Motor America, Inc. ("Daewoo America"), a wholly owned subsidiary of Daewoo Motor Co., Ltd. ("Daewoo Korea"). The appellate court summarized the case as follows:

> "The main issue presented in this appeal is whether the district court abused its discretion when it dismissed several claims of Daewoo Motor America, Inc. against General Motors Corporation, Suzuki Motor Corporation, American Suzuki Motor Corporation, and GM Daewoo Auto & Technology Co. (GMDAT) on the ground of international comity. Daewoo America complained that its legal rights, as the exclusive distributor of Daewoo vehicles in the United States, were violated after a Korean bankruptcy court approved a sale of the assets and liabilities of the Korean parent company of Daewoo America and the defendants then sold in the United States automobiles manufactured by GMDAT."

*Daewoo*, 459 F.3d 1249, 1251. Daewoo America "served as the exclusive distributor of Daewoo automobiles in the United States" pursuant to a written agreement between it and Daewoo Korea. *Daewoo*, 459 F.3d at 1252. On November 10, 2000, "after experiencing financial difficulties, Daewoo Korea filed for bankruptcy protection in Korea under the Korean Corporate Reorganization Act, and the Korean court appointed a receiver." *Id*. By letter of November 8, 2000, "Daewoo Korea notified Daewoo America of its reorganization plans." *Id*. On September 20, 2001, "Daewoo Korea and GM executed a non-binding Memorandum of Understanding regarding the sale of assets of Daewoo Korea to GM. The Korean court approved the Memorandum of Understanding on September 26, 2001." *Id*. at 1253.

On March 27, 2002, Daewoo America "wrote to GM regarding the possible exclusion of Daewoo America from the asset acquisition." *Id*. at 1253. The letter expressed Daewoo America's " 'extreme concerns about the far reaching negative implications of the possible exclusion of . . . U.S. operations from the agreements associated with General Motors' pending acquisition of certain assets of Daewoo Korea.' The letter also expressed concern about the 'potential breach

arising from the [exclusive agreement] between Daewoo Korea and Daewoo America.' " *Id*. Despite the concerns expressed in the March 27 letter, "Daewoo America executed the proxy and thereby accepted 'the Proposed Reorganization Plan filed by the receiver' and granted to . . . an officer of [Daewoo Korea] "the full power and authority to exercise its voting rights in the meeting of parties in interest as though exercised by the undersigned." *Id*.

On April 30, 2002, "GM, Daewoo Korea, and creditors of Daewoo Korea entered into a Master Transaction Agreement (MTA). The MTA contemplated the creation of a new company, GMDAT, to acquire assets and assume liabilities of Daewoo Korea." *Id*. On May 6, 2002, at a meeting of Daewoo Korea's creditors, "the creditors voted in favor of the original reorganization plan." *Id*. On September 30, 2002, "the creditors of Daewoo Korea adopted and the Korean court approved the modified reorganization plan." *Id*. at 1254. "Despite its notice of the meeting and warnings from counsel, Daewoo America did not attend the September 30 meeting and did not execute a proxy to vote for or against the modified reorganization plan." *Id*. On October 17, 2002, "GM, Daewoo Korea, and the creditors of Daewoo Korea closed the transactions under the [plan] in which assets of Daewoo Korea were transferred to GMDAT." *Id*.

On July 22, 2003, "Daewoo America filed an action against GM, GMDAT, Suzuki, and American Suzuki in the California bankruptcy court[27] and alleged", among other things, "fraud, tortious interference with contract, tortious interference with prospective economic advantage," and "successor liability". *Id*. at 1253.

"The principle of international comity applied in this case is an abstention doctrine." *Id*. at 1256. "[A] district court's decision to abstain will only be reversed upon a showing of abuse of

---

[27] U.S. Bankruptcy Court for the Central District of California. *Id*. at 1253. "In February 2004, the Judicial Panel on Multidistrict Litigation transferred the action to the United States District Court for the Middle District of Florida " ' for inclusion in the coordinated or consolidated pretrial proceedings occurring' for *In re Daewoo Motor Co., Ltd., Dealership Litigation*, MDL Docket No. 1510." *Id*. at 1255.

discretion." *Id*. "An error of law constitutes an abuse of discretion." *Id*. To determine whether comity is appropriate, courts evaluate three factors: " '(1) whether the foreign court was competent and used 'proceedings consistent with civilized jurisprudence,' (2) whether the judgment was rendered by fraud, and (3) whether the foreign judgment was prejudicial because it violated American public policy notions of what is decent and just." *Id*. at 1258, quoting *Ungaro-Benages v. Dresdner Bank AG*, 379 F.3d 1227, 1238 (11th Cir. 2004).

Ruling against Daewoo America, the appellate court explained that Daewoo America had "notice of the proceedings in the Korean bankruptcy and an opportunity to participate in those proceedings." *Id*. at 1258. The court further explained that Daewoo America failed to identify any valid public policy notion "that [was] offended by the application of comity to the Korean bankruptcy order." *Id*. Notably, the appellate court included the district court's rationale for granting comity to the Korean proceeding:

> First, the district court found that "Korea has significant interest in regulating business activity on its shores." *Id*. Second, the district court found that "any differences between Korean and U.S. bankruptcy law are minimal and do not offend U.S. notions of due process." *Id*. Third, the district court found that Daewoo America "had notice, as well as a full and fair opportunity to participate in all facets of the Korean bankruptcy process."

*Id*. at 1255.

Comparing the facts of this case to those in *Daewoo* reveals sharp distinctions which marshal against a grant of comity. First, the Korean process afforded notice and an ample opportunity to participate, both prior to any asset transfer. Daewoo Korea filed for bankruptcy on November 10, 2000 (*Id*. at 1252), but the transaction did not close until almost two years later, on October 17, 2002 (*Id*. 1254). The Korean proceeding included a creditor meeting on May 6, 2002, prior to the transfer of any estate assets. *Id*. at 1253. Daewoo America had an opportunity to object but executed a proxy and accepted the proposed reorganization plan. *Id*. Furthermore, the

plan included an assumption of the exclusivity agreement and Daewoo Korea's liabilities, yet Daewoo America still lost the case. *Id*.

The U.K. insolvency proceeding at issue in this matter played out in diametrically opposite fashion. GCM had no notice prior to Hipaaline's filing. *Simultaneous* with that filing, the transaction closed pursuant to the asset-purchase agreement, so GCM was afforded no prior notice or opportunity to object or participate. While the appellate court in *Daewoo* acknowledged that "any differences between Korean and U.S. bankruptcy law are minimal and do not offend U.S. notions of due process[,]" the differences between U.S. bankruptcy and U.K. insolvency law are stark. And as GCM has previously argued,[28] the U.K. has changed its insolvency law since Hipaaline's filing to incorporate creditor notice prior to filing and an opportunity to object prior to the transaction closing, a plain reflection of the material dissimilarity between the two countries' systems at the time of Hipaaline's transaction. "Under the law of the United States, a foreign judgment cannot be enforced in a U.S. court unless it was obtained under a system with procedures compatible with the requirements of due process of law." *International Transactions, Ltd. v. Embotelladora Agral Regiomontana, SA DE CV*, 347 F.3d 589, 594 (5th Cir. 2003), citing *Hilton v. Guyot*, 159 U.S. 113, 163-64 (1895). "Notice is an element of our notion of due process and the United States will not enforce a judgment obtained without the bare minimum requirements of notice." *Ma v. Continental Bank, N.A.*, 905 F.2d 1073, 1076 (7th Cir. 1990), cert. denied, 498 U.S. 967 (1990). This demonstrates the prejudicial effect of the U.K. proceeding.

Additionally, while the *Daewoo* court found that "Korea has significant interest in regulating business activity on its shores[,]" there is no analogous interest on the part of the U.K. here. As of the filing of this motion, still *all* of Leafwell's customers are only within the U.S., so

---

[28] *See* GCM's reply in support of its renewed motions. [Dkt. 105, pp. 2-3].

this Court has a much stronger interest in the outcome of this dispute. Consequently, for the reasons set forth above, the Court should reverse its decision to grant comity to the U.K. proceeding, permit GCM to amend its pleading to include Online MD as a defendant,[29] and modify its injunction to bind Online MD as Hipaaline's successor in interest.

**WHEREFORE**, for the reasons set forth above, Plaintiff, GCM Partners, LLC, respectfully requests that this Court: 1) reconsider its ruling of February 10, 2022 [Dkt. 106]; 2) grant its Renewed Motions Requesting Revision of the Court's Opinion and Order of April 19, 2021 [Dkt. 99]; 3) grant GCM Partners, LLC leave to amend its complaint to add Online MD Ltd. as a party to this action; and 4) grant the relief requested in the prayer for relief set forth therein [Dkt. 099, pp. 5-7].

Respectfully submitted,

**GCM PARTNERS, LLC**

By:  /s/ *Trisha M. Rich*
         One of Its Attorneys

Trisha M. Rich (ARDC No. 6288544)
Phillip W. Nelson (ARDC No. 6283615)
Holland & Knight LLP
150 N. Riverside Plaza, Suite 2700
Chicago, IL 60606
312-263-3600
Trisha.Rich@hklaw.com
Phillip.Nelson@hklaw.com

---

[29] A copy of GCM's proposed First Amended Complaint is attached hereto as Exhibit 18.