**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| GCM PARTNERS, LLC, an Illinois limited liability company, | ) | |
| Plaintiff, | ) | Case No. 1:20-cv-06401 |
| v. | ) | Hon. Georgia N. Alexakis |
| ONLINE MD LTD., a limited company of England and Wales, and EMILY ARIDA FISHER, | ) | |
| Defendants. | ) | |

**DEFENDANT EMILY ARIDA FISHER'S MEMORANDUM OF LAW IN SUPPORT OF HER MOTION TO COMPEL FURTHER DEPOSITION TESTIMONY FROM JONATHAN MRAUNAC AND FOR ATTORNEY'S FEES**

For the reasons discussed in Defendant Emily Arida Fisher's ("Fisher's") Memorandum in Support of her Motion to Disqualify Jonathan Mraunac ("Mraunac") as Counsel at Trial and From Taking Fisher's Deposition (the "Motion to Disqualify"), Mraunac is a necessary witness who uniquely holds information relevant to the facts of this case. See D.E. 256 at 2-10. Among other things, he was the Chief Operating Officer for Plaintiff GCM Partners, LLC ("GCM") in 2020 (the time period giving rise to this lawsuit) and is mentioned by name multiple times in the Second Amended Complaint. Because of this, Fisher noticed Mraunac's deposition, and on August 6, 2026, Mraunac sat for his deposition without objection. See Ex. A: Deposition of Jonathan Mraunac ("Mraunac Dep.") at 11:9-17. Mraunac represented himself at the deposition.[1]

But in doing so, Mraunac inappropriately leveraged his dual role as fact witness and Counsel of Record for GCM to disrupt the deposition – which is the reason for the instant Motion. Although Mraunac made more than 100 objections during the deposition, the instant motion focuses on Mraunac's violation(s) of Fed. R. Civ. P. 30(c)(2) by refusing or failing to answer approximately 70 questions based on non-privilege-based objections.[2]

For these reasons, as further detailed herein, Fisher hereby moves this Honorable Court for an Order requiring (1) Mraunac to provide further deposition testimony, (2) Mraunac to cease his improper disruptive conduct in violation of the Federal Rules of Civil Procedure, (3) Mraunac to be represented by GCM's Counsel at his next deposition, (4) awarding Fisher reasonable attorney's fees incurred in connection with making this Motion under Fed. R. Civ. P. 37(a)(5)(A), and (5)

---

[1] Fisher's Counsel asked whether Mraunac (an attorney in good standing) wanted an attorney to defend his deposition, and Mraunac confirmed that he chose not to do so. Ex. A: Mraunac Dep. at 6:14-25.

[2] Mraunac objected to nine other questions based on claimed attorney-client or attorney work product privileges. Ex. A: Mraunac Dep. at 10:2-3, 10:23-25, 13:9-10, 30:10, 32:21-23, 33:7-10, 85:21-24, 111:17-21, 141:22-23. Most of those objections are likely without merit, but given Mraunac's refusal to answer basic questions during the deposition, the record is incomplete on the issue at this point. Fisher requires a fair deposition of Mraunac before the issue of privilege can be addressed, so Fisher reserves the right to challenge those objections once Mraunac sits for another deposition and provides full and fair testimony.

awarding Fisher reasonable attorney's fees that she will incur in connection with taking Mraunac's deposition again under Fed. R. Civ. P. 30(d)(2).

## BACKGROUND

Mraunac lodged non-privilege-based-objections and then failed or refused to answer the pending question **approximately 70 times**. For instance, Mraunac initially failed to provide an answer to questions **approximately 36 times** after lodging a non-privilege-based objection – e.g., that the question was argumentative, vague, irrelevant, hypothetical, had already been asked and answered, or that it called for a legal conclusion. See Ex. A: Mraunac Dep. at 10:6 (vague), 22:21 (vague), 25:11 (vague), 27:18 (relevance), 28:6-7 (vague), 29:21 (vague), 39:16-17 (as to what I would have done), 46:2 (vague), 49:12 (asked and answered), 54:12 (vague), 58:6 (vague), 78:1-2 (vague), 80:20-23 (relevance), 86:1-4 (calls for legal conclusion), 87:9-12 (calls for legal conclusion), 94:5 (vague), 94:13 (vague), 97:18-22 (relevance), 106:5 (calls for legal conclusion), 109:20-21 (vague), 118:15-18 (relevance), 120:21-23 (calls for legal conclusion), 122:9 (argumentative), 126:21 (calls for legal conclusion), 144:24 (vague), 150:17-18 (relevance), 153:11-13 (relevance and calls for legal conclusion), 172:20 (vague), 177:6-8 (legal issue), 178:16 (calls for legal conclusion), 182:24 (relevance), 184:2-4 (calls for legal conclusion), 200:4 (relevance), 200:7 (relevance), 200:10 (relevance), 200:13 (relevance).

In each of these instances of improper objection or refusal to answer, Fisher's Counsel followed up – pressing Mraunac on his purported belief that he did not need to answer questions that do not call for privileged information. But, unfortunately, such follow-ups were rarely, if ever, successful. See id. (string cite listing examples above). To that point, there were **approximately 33 instances** in which Mraunac expressly stated on record his refusal to answer questions on the basis of these non-privileged-based objections – insisting that he need not respond because, e.g., the questions were argumentative, called for legal conclusions, were irrelevant, were vague, or

were hypothetical. See Ex. A: Mraunac Dep. at 71:21-22 (relevance), 86:9-12 (calls for legal conclusion), 87:15-19 (calls for legal conclusion), 97:18-19 (relevance), 104:14-21 (calls for legal conclusion), 105:2-5 (refusing to characterize agreements), 119:7-14 (vague and calls for legal conclusion), 121:4-5 (calls for legal conclusion), 143:21-23 (calls for legal conclusion)[3], 144:4-6 (calls for legal conclusion), 154:13-21 (refusing to interpret document), 154:24-155:3 (relevance), 156:4-6 (relevance, argumentative, and calls for legal conclusion), 157:8-9 (calls for legal conclusion), 157:14-16 (not required to answer under law), 168:22-23 (calls for legal conclusion), 169:24-170:7 (calls for legal conclusion), 170:10-16 (question would not be permissible in RFA form); 171:11-14 (calls for legal conclusion), 173:11-14 (calls for legal conclusion), 174:17-175:16 (refusing to interpret agreements), 175:25-176:3 (calls for legal conclusion), 176:5-8 (calls for legal conclusion), 176:12-13 (calls for legal conclusion), 176:19-21 (legal issues), 177:11-15 (legal issues), 183:2-3 (hypothetical), 192:10-12 (hypothetical), 193:12-17 (calls for legal conclusion), 198:25-199:4 (relevance), 200:1 (relevance), 200:15-17 (relevance).

One representative exchange (of many) was as follows:

> Fisher's Counsel: And so, you are - - you, as the deponent, are not giving an answer as to whether GCM owned the data that was just discussed; the data that was entered by the potential patients into the website operated by Leafwell?
>
> Mraunac: Objection. You've defined the "data", as you call it, in the intake process incompletely, and it calls for legal conclusion because data ownership is governed by the agreement.
>
> Fisher's Counsel: Right. And that's why you put an objection on the record.
>
> Mraunac: *And I'm not going to answer it* because it calls for a legal conclusion.

Id. at 87:4-16 (emphasis added).

At times, Mraunac failed or refused to answer questions on non-privileged grounds that he

[3] Fisher notes a transcription error where Mraunac's answer is contained within the question asked.

believed had already been briefed before the Court. 119:7-14 ("not going to answer anything that calls for a legal conclusion. The legal issues that are at play…are in [your] motion, and GCM has submitted a response to that motion and Judge Alexakis will make a ruling on it…. So, are we done with the legal conclusion questions."). He also failed or refused to answer questions that he believed related to (or called for) information about allegations that were contained in the Second Amended Complaint. See id. at 86:1-4 ("GCM's position…is stated in the Second Amended Complaint. So, I'm going to defer to that document."); 120:21-23 ("GCM's position in this case is in the Second Amended Complaint."); 184:2-4 (The reason for the damages is in the Second Amended Complaint."), 193:12-17 ("answer to that is in the Second Amended Complaint….It's a legal issue, so we can have another tiff if you want, or you can ask me the next question."). One specific example of such an exchange is as follows.

> Fisher's Counsel: The Second Amended Complaint often lumps together "confidential information" and "proprietary information", but it does not distinguish between these two. And, as there are implications on the lawsuit that relate separately to those two categories, in order to have a fair chance at this lawsuit, we need to understand how it is GCM is distinguishing between what is "confidential information" and what is "proprietary information."
>
> Mraunac: And, we've identified that in the Second Amended Complaint.

Id. at 158:7-17.

At other times, Mraunac seemed to draw a line between what he considered to be factual questions and legal questions when justifying his decision not to answer a question. See e.g., id. 87:15-19 ("I'm not going to answer it because it calls for a legal conclusion. And, you've been in this game a long time, so you know it's not a fact question. So, if you want to take it up to the Judge, you can. But, I'm not answering it."); 177:11-15 ("the evidence that you're allowed to distill from me is factual. These are legal issues that you're asking me about, I've already refused to answer the question, so you can do what you want with that. But, let's get on to the next one.").

However, some of these so-called "legal issues" were about the most basic factual contentions in the case. For instance:

> Fisher's Counsel: How do you distinguish the wrong doings visited upon GCM by Emily Fisher the individual versus Emily Fisher who was the CEO of Hipaaline and the CEO of Online MD?
>
> Mraunac: Objection, calls for a legal conclusion. These issues have all been briefed. I'm not going—
>
> Fisher's Counsel: They're not on the record. I need them on the record under your sworn testimony.
>
> Mraunac: Objection, calls for a legal conclusion. These legal issues have been briefed at nauseam in this court over the last 6 years. I'm not going to answer the question….You're not asking me a factual question, you're asking me to make legal conclusions about people's responsibilities and roles. It's not going to happen.
>
> Fisher's Counsel: What action did Emily Fisher take as an individual that was different than the action she took as a CEO of either Online MD and Hipaaline?
>
> Mraunac: Same objection. This is all, the record is replete with briefing on this.

Id. at 175:18-176:13.

Likewise, Mraunac failed or refused to answer questions on non-privilege grounds that he believed related to the contract executed by GCM and Hipaaline Ltd. ("Hipaaline") (the GCM-Hipaaline Agreement") or its negotiation. Oftentimes, he took the position that he did not have to answer because those questions were irrelevant – despite that contract being at the core of this lawsuit and having been attached to (and extensively quoted in) GCM's Second Amended Complaint. See e.g., Id. at 86:9-12 ("that's governed by the contract between the parties, so I don't have to answer your question."); 105:2-5 ("definition of company is as written in these agreements. So, I'm not going to characterize or interpret that. Judge Alexakis will do that."); 118:15-18 ("The contract as attached to the Second Amended Complaint says what it says. There's no relevance to any negotiation that led up to that contract. It doesn't matter."), 153:11-13 ("The definition of a

patient is a question of law."); 104:17-21 ("not going to answer any questions where you seek to have me interpret the document….I can do this with you all day, but you aren't going to get out of me a legal interpretation about a legal instrument."); 154:13-21 ("blanket objection if you're going to ask me to interpret any of the provisions in this agreement, I've said it a few times now. These are legal conclusions. The Court will interpret the meaning of anything in this document. I'm not going to do it for you. So, if you want to save both of us some time, we can skip it. Or, if you want to hear my objections piece by piece, we can do that, too."); 154:24-155:3 ("This document is self-defining. And unless it's found to be ambiguous, the parties intent is gleaned solely from the document. So, I'm not going to answer those questions."), 169:24-170:5 ("calls for a legal conclusion as to whether Hipaaline…had a duty and what the scope of that duty was. Next question. I know this isn't your first time, I thought maybe that you would…outsmart me on some of these questions."); 171:11-14 ("legal conclusion as dictated by the agreement….I'm not answering."), 143:21-23 ("Trade secrets is a defined term. I'm not going to answer it.").

Notably, as to the last objection, "Trade Secrets" is not a defined term in the GCM-Hipaaline Agreement (see D.E. 187-2: GCM-Hipaaline Agreement), which was the reason Fisher's Counsel was asking about it. The exchange on this topic is informative:

> Fisher's Counsel: . . . in order to prove this case, you're going to have to explain to the jury what the trade secrets were. So, we have a right to make a discovery inquiry on what are the trade secrets.
>
> Mraunac: Maybe. But for the purposes of this testimony right now, I think it's a legal conclusion. I'm not going to answer the question.
>
> Fisher's Counsel:…So, it is your personal position as the deponent today that although you contributed to the writing of this Complaint and although you stand by the pleadings within the complaint, you cannot tell me what the trade secrets were?
>
> Mraunac: No. That is incorrect. I won't.

Ex. A: Mraunac Dep. at 143:25-144:12.

And in some instances, the questions that Mraunac refused to answer on these bases had nothing to do with the GCM-Hipaaline Agreement (Mraunac's purported basis for refusal to answer) – and instead concerned basic factual premises. For instance:

> Fisher's Counsel: What did you understand Hipaaline's relationship to be with the Leafwell Platform?
>
> Mraunac: Oh, God, same objection. Calls for a legal conclusion. Your answers are in the Agreement. I'm not going to give you my opinion or characterization of the Agreement.

Id. at 173:9-14. But the answer is not in the GCM-Hipaaline-Agreement. There is no mention of the Leafwell platform or software in the Agreement. See D.E. 187-2: GCM-Hipaaline Agreement. So, that document does not describe the relationship between Hipaaline and the Leafwell platform.

Mraunac also refused to answer questions about other lawsuits where he was a plaintiff because he believed they were irrelevant. See e.g., Ex. A: Mraunac Dep. at 198:25-199:4 ("going to make a blanket objection to this as irrelevant….I'm not answering any questions about it."); 200:1 ("not answering"); 200:15-17 ("not going to answer them….what I do as a pro se Plaintiff has nothing to do with GCM."). Though not obligated to do so, Fisher's Counsel explained the purpose of the questions – e.g., that Fisher's Counsel was simply "[t]rying to get to how it is that you assess damages" (id. at 198:15-16), but Mraunac still refused to answer.

Mraunac also refused to answer questions about his equity in GCM[4] or compensation because he believed the questions were irrelevant. See, e.g., id. at 71:21-22 ("I'm not going to answer questions about my comp."); 97:18-19 ("I'm not going to tell you that."). Again, Fisher's Counsel set forth his reasoning for the questions – e.g., "Did GCM recognize you separately as a

[4] Of course, among other aspects of relevance, equity in the plaintiff entity has potential to influence the testimony Mraunac will provide at trial.

Chief Operating Officer with one form of compensation, and recognize you separately as the general counsel with a different form of remuneration?"[5] – but Mraunac responded by stating that he was "not going to answer any questions about my comp." Id. at 72:5-11. Mraunac also refused to answer questions that he believed requested a hypothetical answer. See e.g., id. 183:2-3 ("I'm not going to answer that question whether I wished anything. Ask a better one."); 192: 10-12 ("I have no idea what the facts are underlying that assumption, so I'm not going to answer.").

Mraunac seemingly justified his refusal to respond to many other deposition questions through an apparent belief that he would not need to answer questions if they were asked through requests for admission. For instance, he stated:

> I'm having a little fun here. Let's try this. If you submitted any of these questions you have asked me today in a request for admission, they would all be objectionable and none would have to be answered. But, somehow you think that if it's in a deposition room, it transforms into I have to answer all these. So, let's just get through this.

Id. at 170:10-16. Mraunac then explained that his refusal to answer questions was based on his understanding of the Rules of Evidence; disregarding the Rules of Civil Procedure:

> I don't have any sympathy for you, especially because of who you represent….[I]t's not like I'm going to fall for one of these, like after 90 you are going to go, I got him, this is not going to happen….This is my understanding of the rules of evidence and all the discovery procedures, and you haven't, you've not asked me a proper question that I haven't answered, and all the objections I've made are valid. You're free to test those if you want, but I'm trying to encourage you to give up on this because if you think that you're going to get me to interpret one of these legal instruments, it's not going to happen. So, if that's nothing more than my effort to deter you, you have it. But, let's keep going.

Id. at 174:17-175:16.

When Mraunac did answer questions, he often demonstrated that he was not taking the process seriously. See, e.g., id. at 167:2 ("I'm being facetious, Brett."); 170:10 ("I'm having a little

[5] Fisher notes that the transcript of Mraunac's deposition remains in draft form and contains some errors. Here, the transcript states, "remediation," but the actual word was remuneration.

fun here"); 80:23 ("we're bordering on wasting my time"). Of course, this gives rise to broader concern that most of the few answers he actually provided were tainted for that reason as well.

When Fisher's Counsel explained that he was suspending the deposition, Mraunac declared: "I'm not coming back. So, if you think that you can compel another session, go for it. But, I'll be happy to go and argue these objections one by one." Id. at 201:12-15. In essence, he dared Fisher's Counsel to move to compel. See id. Indeed, on multiple occasions during the deposition, Mraunac challenged Fisher's Counsel to address his refusal to answer by bringing a motion to compel. See id., e.g. at 87:18-19 ("if you want to take it up to the Judge, you can."); id. at 200:20-22 ("if you think Judge Alexakis will overrule my objections on my process lawsuit, go for it."); id. at 167:23-24 ("you can bring a motion to compel."). And during the Parties conferral conference about this Motion, Mraunac justified his refusals not to answer because Fisher's Counsel could have called the Court during the deposition, suspended the deposition, or moved to compel after the deposition. That brings us to the instant Motion for relief.

## ARGUMENT

Per Fed. R. Civ. P. 30(c)(2), "[a]n objection at the time of the examination—whether to evidence, to a party's conduct, to the officer's qualifications, to the manner of taking the deposition, or to any other aspect of the deposition—must be noted on the record, but the examination still proceeds; the testimony is taken subject to any objection." Moreover, "[a] person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion [to terminate or limit a deposition] under Rule 30(d)(3)." Id. "[I]t is impermissible for counsel to instruct a witness not to respond to a question absent a claim of privilege." United Nat'l Records, Inc. v. MCA, Inc., 106 F.R.D. 39, 41 (N.D. Ill. 1985).

If a motion to compel additional testimony is granted, the Court "must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the

party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees," unless "the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; the opposing party's nondisclosure, response, or objection was substantially justified; or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A). Moreover, courts "may impose an appropriate sanction—including the reasonable expenses and attorney's fees incurred by any party—on a person who impedes, delays, or frustrates the fair examination of the deponent." Fed. R. Civ. P. 30(d)(2).[6] Courts have also ordered parties to pay attorney's fees that will be incurred by taking a deposition a second time. Specht v. Google, Inc., 268 F.R.D. 596, 602-03 (N.D. Ill. 2010).

Layered on top of all of that is the fact that Mraunac was conducting himself as "both a lawyer making objections on behalf of the witness and as judge ruling on his own objections" – which is a practice upon which "[t]his Court looks dimly." MCA, Inc., 106 F.R.D. at 41.

In light of the facts (i.e., specific deposition questions and answers) described above, and for the reasons detailed below, this Court should compel Mraunac to be deposed in accordance with the Federal Rules of Civil Procedure, while represented by Counsel. And, since Mraunac is the Chief Operating Officer and General Counsel – and also the Counsel of Record – for GCM, GCM should be ordered to pay Leafwell sanctions as contemplated by Fed. R. Civ. P. Rule 37(a)(5)(A) and Rule 30(d)(2), along with any other sanctions this Court deems fit.

### A. Mraunac cannot refuse to answer questions based on non-privilege objections.

Mraunac violated Federal Rule of Civil Procedure 30(c)(2). He failed or outright refused to answer questions based on non-privilege-based objections during the deposition approximately 70 times (including approximately 33 times where he stated verbatim that he would not answer

[6] Courts may impose sanctions in various forms, including dismissal of the case. See Curry v. Rambo, 2025 U.S. Dist. LEXIS 271333, *3-14 (C.D. Ill. Dec. 29, 2025) (dismissing case of a plaintiff representing himself at deposition for continuously refusing to answer deposition questions and for his abusive, unreasonable, and bad-faith misconduct during his deposition).

the question). The Court should order that he appear for another deposition session, answer the questions posed by Fisher's Counsel, and cease his improper conduct.

To be clear: a party may "object to a question," but "the deponent must still answer the question," and "[t]he only exceptions" are "preservation of a privilege, enforcing a limitation ordered by the court, or presentation of a motion to terminate or limit the deposition under Rule 30(d)(3)." Specht, 268 F.R.D. at 598 (holding instruction "not to answer" was improper and "[t]he proper action…would have been to state his objection…and allow the witness to answer"); accord, e.g., Berry v. Ford Modeling Agency, 2011 U.S. Dist. LEXIS 175852, *5-6 (N.D. Ill. Apr. 25, 2011) (awarding sanctions and holding instruction not to answer based on relevance violated the Federal Rules because parties "may not simply refuse to answer deposition questions unless doing so is necessary to preserve a privilege"); Patterson v. Burge, 2007 U.S. Dist. LEXIS 33102, *12-13 (N.D. Ill. May 4, 2007) (awarding sanctions and stating "[a]s the Seventh Circuit recently observed, a party may not simply refuse to answer questions….Deposition questions are to be answered notwithstanding an objection, unless the objection is to preserve a privilege.").

In some instances, Mraunac purported to ground his refusal to answer questions on the Rules of Evidence (Ex. A: Mraunac Dep. at 174:17-175:16); but, as a matter of law, Federal Rule of Civil Procedure 30(c)(2) requires that the deponent provide an answer to every question unless a privilege-based objection is made. At one point, Mraunac justified his non-response by stating that, if a given question had been posed through a Fed. R. Civ. P. 36 Request for Admission, then he would not need to answer it. Ex. A: Mraunac Dep. at 170:10-16. Obviously, this is wrong. See Patterson, 2007 U.S. Dist. LEXIS 33102 at *12-13 (party may not refuse to answer questions).

Mraunac continually stated that he would not answer questions that could potentially be covered by the allegations in the Second Amended Complaint, or the GCM-Hipaaline Agreement,

or were legal issues briefed before the Court at some point in the six-year history of this case. See Background, supra. The list of questions he refused to answer are too numerous to recount in this Motion, but many of them pertained to basic propositions in GCM's Second Amended Complaint.

For example, he refused to answer: whether GCM owned the data at issue in this lawsuit (Ex. A: Mraunac Dep. at 87:4-19); what the difference between Proprietary Information and Confidential Information is for purposes of this lawsuit (id. at 154:9-155:3); what constitutes trade secrets for purposes of this lawsuit (id. at 143:24-144:12); what allegations are against Fisher as an individual versus Fisher as CEO of Online MD [current defendant] or Hipaaline [former defendant] (id. at 175:17-177:15); what duties the GCM-Hipaaline Agreement assigned to Hipaaline versus Fisher the individual (id. at 168:19-23); who is responsible for the www.leafwell.co website and the Leafwell platform (id. at 166:22-25). In summary, he refused to answer the questions that relate directly to GCM's causes of action. He also refused to answer other questions that he believed were irrelevant (see id., e.g. at 27:18, 200:1-17) or hypothetical in nature (see id., e.g. at 183:2-3, 192:10-12). But courts hold that refusing to answer based on relevance or hypothetical objections violates the Federal Rules. See Google, Inc., 268 F.R.D. at 599; Berry, 2011 U.S. Dist. LEXIS 175852 at *5-6.

At best, Mraunac lacks a fundamental understanding as to the rules applicable at a deposition. At worst, and perhaps consistent with his deep-seeded animosity towards Fisher (see, e.g., Ex. A: Mraunac Dep. at 133:8-11 ("I think she's a terrible person")), he *knew* that his refusal to answer was inappropriate and did so anyway – perhaps to draw out the proceedings, and drain Fisher's resources. Indeed, during the Parties' conferral conference on August 21, 2026, Mraunac stated that he believed his refusal to answer was justified because the Court could merely resolve any dispute. In other words, Mraunac intentionally violated the rules and used Court intervention

as a shield to do so. Undoubtedly, this conduct violates Federal Rule of Civil Procedure 30(c)(2). An attorney like Mraunac knows, or should know, that he must answer any question unless it calls for privileged information. Now, the Parties must undertake motion practice and arrange another deposition. He must be compelled to sit for a deposition and sanctions should be awarded.

Additionally, this Court should order that, at the next deposition, Mraunac be represented by Counsel who is more familiar with the Rules of Civil Procedure and for whom the case is not as "personal" (id. at 32:12). Indeed, courts have held that attorney-deponent' self-representation is improper. See Dunn v. Palmira Golf & Country Club, Inc., 2018 U.S. Dist. LEXIS 173911, *6-7 (N.D. Ind. Oct. 9, 2018) ("it is obviously inappropriate for [attorney] to serve as the attorney at his own deposition"); MCA, Inc., 106 F.R.D. at 41 (witness' serving as "both a lawyer making objections on behalf of the witness and as judge ruling on his own objections" is a practice upon which "[t]his Court looks dimly"). Insofar as a privilege for GCM's key witness to represent themselves at a deposition even ever existed, GCM (and, specifically, Mraunac) should be deemed to have now forfeited that privilege due to Mraunac's misbehavior during the recent deposition.

**B. Fisher is entitled to her reasonable attorney's fees incurred in making this Motion, as well as (separately) those fees and costs that will be incurred by taking Mraunac's deposition again after this Court compels it.**

In addition to ordering that Mraunac sit for another deposition session, the Court should order GCM to pay Fisher's attorney's fees incurred in bringing this motion under Fed. R. Civ. P. 37(a)(5)(A), as well as those fees and costs that Fisher will incur taking his deposition again as a sanction under Fed. R. Civ. P. 30(d)(2). Mraunac's failure or refusal to answer approximately 70 questions based on non-privileged objections in violation of Federal Rule of Civil Procedure 30(c)(2) was "substantially unjustified" and impeded Fisher's ability to take his deposition.

Courts must award attorneys' fees incurred in connection with making a motion to compel when the motion is granted and the refusal to disclose information was unjustified. See BP Amoco

v. Flint Hills Res., 2009 U.S. Dist. LEXIS 131274, *11-14 (N.D. Ill. Feb. 11, 2009) (Plaintiff "improperly instructed [deponent]" not "to answer" on relevance grounds, "[a]s such, the Court awards [defendant] its reasonable attorneys' fees incurred in connection with the filing of this motion"). Courts may also award fees incurred for nondisclosure during a deposition against a person that impedes, delays, or frustrates the fair examination of the deponent. Medline Indus. v. Sullivan, 2009 U.S. Dist. LEXIS 93970, *10-12 (N.D. Ill. Oct. 6, 2009) (awarding Rule 30(d)(2) sanctions). Courts have also awarded fees that would be incurred by having to take a witness' deposition again due to improper conduct during the first deposition. See, e.g., Google, Inc., 268 F.R.D. at 602-03; Medline Indus., 2009 U.S. Dist. LEXIS 93970, at *10-12.

For instance, in Specht v. Google, Inc., the Court ordered that "all costs and reasonable attorney's fees" incurred taking the second deposition of a deponent "be paid by [p]laintiffs" where the defending attorney's actions were "deliberately evasive and calculated to thwart discovery." 268 F.R.D. at 600-01, 603. The facts in Specht v. Google, Inc. are strikingly similar to this case. In that case, Google moved to compel additional testimony from a deponent who acted as counsel for plaintiff and was a witness in the case. Id. at 597. The attorney defending that deponent prevented the deponent "from testifying on clearly non-privileged issues" by making "numerous, extensive, and repeated speaking objections." Id. at 597-99. For example, the Court held that the defending attorney "egregiously violated Rule 30(c)(2) by instructing [the deponent] not to answer a question because his answer would be a 'guess.'" Id. at 599. The Court also explained that certain objections were improper when "Google's counsel was simply trying to establish that [the deponent], as counsel of record, was aware of, and stood by, the statements and exhibits he submitted to the Court." Id. at 600. Per the Court, "nothing in the question…required him to reveal privileged communications or divulge his mental impressions, conclusions, opinions, or legal theories about

the case." Id. at 600. The Court also held an objection was improper when Google's attorney asked "about the phrase 'custom software solutions'…in a discovery response," because "factual bases for representations in a declaration are not privileged and must be disclosed." Id. at 601.

Here, as demonstrated in the Background and § A, supra, Mraunac lodged improper objections throughout his deposition and refused to answer questions. Even worse (and, seemingly more egregious than that which occurred in the deposition at issue in Specht v. Google, Inc.), Mraunac did not even attempt to claim that the vast majority of questions he refused to answer sought information protected by the attorney-client or work product privileges. Such conduct violates Fed. R. Civ. P. 30(c)(2). The fact that Mraunac is an attorney, and Counsel of Record for GCM, makes his conduct here even worse. He also admitted during the Parties' conferral conference that his refusal to answer was permissible because Fisher could seek court intervention. Mraunac's refusal to disclose information was without justification, and it impeded the deposition.

GCM should be responsible for paying Fisher's attorney's fees incurred making this motion and those that Fisher will incur taking Mraunac's deposition again after this Court compels it.

## CONCLUSION

For the foregoing reasons, Fisher respectfully requests that this Court orders:

(1) That Mraunac sit for another deposition session;

(2) That Mraunac answer all questions as required by Federal Rule of Civil Procedure 30(c)(2);

(3) That Mraunac be represented by Counsel at the next deposition;

(4) That GCM pay the attorney's fees Fisher incurred by making this motion under Federal Rule of Civil Procedure 37(a)(5)(A);

(5) That GCM pay the attorneys' fees and costs that Fisher will incur having to take Mraunac's deposition again under Federal Rule 30(d)(2);

(6) And any other relief this Court believes justified under the circumstances.

Date: August 25, 2026

Respectfully Submitted
on Behalf of Emily Arida Fisher,

*/s/ Jeffrey Butler*

Jeffrey Butler, Esq.
Illinois State Bar No. 6343082
Jeffrey.Butler@HaynesBoone.com
HaynesBoone LLP
1 Financial Center
Suite 1100
Boston, MA 02111

Paul Lewis, Esq.
*Admitted Pro Hac Vice*
Paul.Lewis@HaynesBoone.com
HaynesBoone LLP
1 Financial Center
Suite 1100
Boston, MA 02111

Brett Walker, Esq.
*Admitted Pro Hac Vice*
Brett.Walker@HaynesBoone.com
HaynesBoone LLP
1 Financial Center
Suite 1100
Boston, MA 02111

## CERTIFICATE OF SERVICE

I hereby certify that, on August 25, 2026, I served the foregoing document via electronic mail on all counsel of record registered in this matter on the ECF system for the United States District Court for the Northern District of Illinois, as follows:

Trisha M. Rich
Phillip W. Nelson
William A. Ringhofer
Holland & Knight LLP
150 N. Riverside Plaza, Suite 2700
Chicago, IL 60606
Trisha.Rich@hklaw.com
Phillip.Nelson@hklaw.com
William.Ringhofer@hklaw.com

Jonathan Mraunac
JMraunac@gcmp.us

By: *<u>/s/ Jeffrey Butler</u>*

Jeffrey Butler (IL Bar No. 6343082)