**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| GCM PARTNERS, LLC, an Illinois limited liability company,<br>Plaintiff,<br>v.<br>ONLINE MD LTD., a limited company of England and Wales, and EMILY ARIDA FISHER,<br>Defendants. | ) | Case No. 1:20-cv-06401<br>Hon. Georgia N. Alexakis |

**DEFENDANT EMILY ARIDA FISHER'S MEMORANDUM OF LAW IN SUPPORT OF HER MOTION TO DISQUALIFY JONATHAN MRAUNAC AS TRIAL COUNSEL AND FROM TAKING EMILY ARIDA FISHER'S DEPOSITION**

Defendant Emily Arida Fisher ("Fisher") hereby moves this Honorable Court for an Order disqualifying Jonathan Mraunac ("Mraunac") from participating as trial counsel in this action and from taking Fisher's deposition.

## INTRODUCTION

During the six-year history of this case, Mraunac has regularly fluctuated between witness and advocate. Examples of this are numerous – including a blurring of roles during a hearing, as well as during his own deposition; sometimes Mraunac appears as an attorney on behalf of GCM, other times he appears as a fact witness for GCM, and other times it is somewhere in between. Additionally, for several key allegations in GCM's Second Amended Complaint ("SAC"), Mraunac is the only witness. This makes sense, though, because Mraunac served as GCM's Chief Operating Officer and General Counsel; and, back in 2020 (at the time of the alleged events at issue), GCM had no employees and only two independent contractors – one of whom was Mraunac. For better or worse, Mraunac is the primary witness for GCM; Mraunac even said as much during his recent deposition (e.g., "I am GCM").

Given all of this, Mraunac should be disqualified as trial counsel pursuant to Model Rule

3.7 – since he is a necessary witness who will testify about contested, material issues, which do not relate to the nature and value of his legal services in this case. And, if this motion is granted, there would be no risk of leaving GCM unrepresented because three Holland & Knight lawyers have entered appearances for it.

Further, Mraunac's disqualification should also extend to any and all depositions in which Emily Fisher is the deponent. During Mraunac's deposition, he called Fisher various names such as "fraudster," "scam[mer]," "greedy," and "maniac" to name a few, and he made various other statements insulting Fisher, including calling her a "terrible person." He also concluded his own deposition with a threat regarding the impliedly unpleasant manner in which he plans to conduct Fisher's deposition. Undoubtedly, he has unique personal disdain for her. Given all of that, in conjunction with Mraunac's status as a key witness – and consistent with caselaw from this Federal District – Mraunac should not be permitted to take Fisher's deposition in this case.

## **BACKGROUND**

By way of background, Mraunac was GCM's Chief Operating Officer and General Counsel. D.E. 187: SAC, at ¶ 36; D.E. 84, 2:10-11 (Mr. Mraunac introducing himself to the Court as "Jonathan Mraunac, general counsel and COO for GCM Partners."). Mraunac is also one of GCM's three members (D.E. 187 at ¶ 20), he holds equity in GCM (Ex. A: Deposition of Jonathan Mraunac ("Mraunac Dep."), at 97:12-16), and he helped organize GCM in 2018 (id. at 24:8-16). In June 2020, according to Mraunac, GCM had no employees and he was one of GCM's two independent contractors. Id. at 41:18-21. As Chief Operating Officer, Mraunac "had responsibility for the overall operation of the business." Id. at 40:14-16.

On October 28, 2020, GCM filed its original Complaint against Fisher and Hipaaline, and amended it twice thereafter culminating with the operative SAC (see D.E. 1: Complaint; D.E. 156:

First Amended Complaint; D.E. 187: SAC). Each iteration of GCM's Complaint relied on an Affidavit or Declaration from Mraunac (see D.E. 1: Complaint, Ex. 3: Mraunac Aff.; D.E. 156: First Amended Complaint, Ex. 3: Mraunac Decl.; D.E. 187: SAC, Ex. 3: Mraunac Decl.).

The SAC incorporates and relies upon Mraunac's March 19, 2025 Declaration, which alleges that he joined GCM as Chief Operating Officer and General Counsel in June 2020; that GCM and Hipaaline entered into the GCM-Hipaaline Agreement; that he became involved in the dispute between GCM and Hipaaline when the business relationship started to deteriorate; and that on October 23, 2020, Hipaaline's Counsel, Martin Carroll, told him that Hipaaline and Fisher intended to eliminate GCM's access to the Leafwell platform owned by Hipaaline.[1] D.E. 187: SAC, ¶ 138, Ex. 3: Mraunac Decl. ¶¶ 2-4, 6.

The SAC and the accompanying Declaration of GCM's CEO (George Gavrilos) also include additional allegations relating to Mraunac's actions, some of which are key to this dispute. For instance, per the SAC and Gavrilos' supporting declaration, in or around June 2020, "Mraunac recommended that GCM and Fisher memorialize their business relationship in writing." Id. at ¶ 37., Ex. 1: Gavrilos Decl. ¶¶ 13-15. And on July 7, 2020, GCM and Hipaaline entered into the GCM-Hipaaline Agreement. See D.E. 187 at ¶¶ 39, 62. Mraunac was personally involved in the drafting of that contract, which has now become a central issue to this case. Mraunac Dep., at 114:12-18. Additionally, Mraunac was involved in the day-to-day business relationship between the Parties. Mraunac himself was given a leafwell.co email address; and, from approximately June 19, 2020, through October 23, 2020, he attended weekly web-development meetings (via video call) with Hipaaline's web-development team who maintained and improved the Leafwell

[1] The allegation regarding the conversation with Carroll was included in Paragraph 138 of the SAC, and Fisher answered that she had insufficient information to admit or deny that allegation. D.E. 208: Fisher's Answer, ¶ 138.

platform. D.E. 187 at ¶¶ 63, 81.

Before Mraunac appeared as a Counsel of Record in this case on March 11, 2021 (D.E. 71: Mraunac Appearance), he testified as GCM's officer and/or its agent in Court hearings in this case. For instance, Mraunac attended the October 30, 2020 and November 9, 2020 hearings on GCM's Emergency Motion for Temporary Restraining Order (filed on October 28, 2020). See D.E. 4: TRO Motion; D.E. 16: 10/30/2020 TRO Hearing Transcript; D.E. 45: 11/9/2020 TRO Hearing Transcript. GCM was represented by Trisha Rich and Lisa Kpor at both hearings. D.E. 16 at 1; D.E. 45 at 1. Throughout the hearing, the Court asked questions of GCM's attorneys, but also engaged directly with Mraunac – thereby indicating that Mraunac was serving in some sort of a hybrid role at that point. For instance, when the Court asked Counsel of Record for GCM whether GCM operates with regard to regulators, GCM's Counsel stated, "I think my client might want to weigh in on that because he deals directly with them on a regular basis." D.E. 45 at 36:12-18. Mraunac then proceeded to explain to the Court GCM's role vis-à-vis regulators, how providers are responsible for maintaining medical records, and how the Leafwell platform factors into that situation. D.E. 45 at 36:20-40:10. Mraunac provided further testimony at the hearings on topics such as whether Hipaaline or GCM administers the Leafwell platform, whether GCM or other entities run brick-and-mortar clinics, whether GCM saw patients, and whether GCM owns medical practices. D.E. 16 at 35:23-36:10; D.E. 45 at 28:9-30:12, 36:12-40:10, 42:7-18. At that same hearing, Mraunac also acknowledged that he and Fisher's attorney (Attorney Marc Goldsand) "negotiated a draft of this agreement [the GCM-Hipaaline Agreement contract]." Id. at 30:8.

But even at those hearings where Mranuac provided testimony as a witness, he also simultaneously acted as an attorney. For instance, at one-point during the October 30th hearing, Mraunac stated "I could tell that you're [Judge Ellis] reading from Illinois' medical cannabis

statute. Does the Court want a legal analysis of whether the practice of medicine in each state under its respective state-sanctioned medical cannabis statute is the practice of medicine?" D.E. 16: 10/30/2020 TRO Hearing, at 60:25-61:4. Additionally, the Court informed the Parties that they could file additional briefing, and Mraunac asked whether the additional briefing should include "affidavit testimony" in addition to "legal argument." See D.E. 45: 11/9/2020 TRO Hearing, at 62:10-18.

After Mraunac appeared as Counsel of Record, his actions that preceded his appearance remained at the factual center of the proceedings – which remains true today. For instance, at the March 1, 2021 telephonic hearing related to Plaintiff's Emergency Motion for Issuance of Rule to Show Cause and Finding of Contempt (D.E. 57), which Mraunac did not attend, Defendant Fisher provided testimony relating to Mraunac. D.E. 85. Fisher explained that that business between the Parties had been great; that Mraunac was pushing for the GCM-Hipaaline Agreement to be executed; that he wanted to make some final "minor" changes to the GCM-Hipaaline Agreement; that she agreed to those changes without legal input or legal representation at the time of signing; and that she only learned later how material those changes were. See D.E. 85 at 51:15-52:17. However, GCM's other Counsel of Record objected – stating: "[t]his is not at all how Jonathan Mraunac *would testify* that this happened, all the way down to whether Ms. Fisher was represented." Id. at 52:18-25 (emphasis added).

On July 15, 2026, Fisher's Counsel noticed the deposition of Mraunac, and he sat for his deposition on August 6, 2026 without objection – but represented himself; there were no other GCM lawyers present.[2] Ex. A: Mraunac Dep. at 12:12-17 (stating he appeared at deposition "[b]y agreement" and without other counsel). As is further detailed in Fisher's Motion to Compel Further

[2] GCM is represented by Holland & Knight in this case - specifically Phillip Nelson, William Ringhofer, and Trisha Rich (D.E. 2, 67, 192).

Deposition Testimony From Jonathan Mraunac and for Attorney's Fees (D.E. 252)**,** the entire deposition was deliberately thrown off the rails – seemingly due to Mraunac's conception of the rights he possesses by virtue of his own apparent dual role as counsel and fact witness, in conjunction with a poor understanding of what was required of him as a deponent under Federal Rule of Civil Procedure 30(c)(2). See D.E. 253: Memorandum in Support of Motion to Compel, at 2-9 (citing, and discussing, approximately 70 examples of Mraunac's failure and refusal to answer questions based on non-privilege based objections).

For example, contrary to the requirements of Federal Rules of Civil Procedure, Mraunac expressly refused to answer numerous questions relying on his own non-privilege-based objections (e.g., complaining that the questions were argumentative, irrelevant, called for legal conclusions, and had already been asked and answered, to name a few). But when Mraunac did answer questions, his statements demonstrated that he is both a fact witness and advocate in this case. When Fisher's Counsel asked Mraunac if he participated in drafting the complaint as a "witness" or "as an attorney," and Mraunac answered "both." Ex. A: Mraunac Dep. at 142:3-9. Likewise, Counsel for Fisher asked for Mraunac's personal position as opposed to GCM's on a question and Mraunac responded by stating "I am GCM." Id. at 144:18-20.

Moreover, Mraunac was seemingly eager to testify about the extent to which this lawsuit (and perhaps his deposition as well) were deeply personal to him:

> Fisher's Counsel: I'm trying to keep this cordial. Nothing about this is personal to me.
>
> Mraunac: It's personal to the two of us [Mraunac and Dr. Gavrilos], so you can deal with the witness as I come.
>
> ***
>
> Fisher's Counsel: And, when we were off the record, I guess I'll put this on the record. If you don't want me to put it on the record, I think it's important to.

> Mraunac: Let's do it.
>
> Fisher's Counsel: While we were off the record, Mr. Mraunac [stated that he] is concerned that I'm wasting his time, and that's certainly not my intent. I'm a professional trying to do my job the best way that I can. I'm trying to represent my client and her interests in the best way that I can, and I expect the same [] of you. The difference here is that to you, this is personal.
>
> Mraunac: It's not the only difference.

Id. at 32:9-13, 81:11-82:22.

Mraunac was also transparent about the degree to which he harbors considerable personal animosity toward Fisher. Specifically, on the topic of Fisher, Mraunac testified that "I think she's a terrible person," (Ex. A: Mraunac Dep., at 133:11), that "she's a fraudster," (id. at 133:7), that "she uses people [and] discards them," (id. at 133:8-9), "[Fisher] needed a new physician to scam," (id. at 113:16-17), that he "thankfully" had never met Fisher in-person (id. at 130:21-23), that "she's greedy and opportunistic," (id. at 141:16) and that he hopes she is being investigated for criminal matters (id. at 133:21-23). Mraunac even described Fisher's behavior as that of a "maniac." Id. 137:11. Mraunac went on to say that that he did not have "any sympathy" for Fisher's Counsel "especially because of who [he] represent[s]," (id. at 174:17-19).

Then, at the end of the deposition, unprompted, Mraunac declared: "*I promise you Emily [Fisher]'s deposition is going to be different than this one. A lot.*" Id. at 201:20-21 (emphasis added). Fisher's Counsel inquired, "How so?" and "I'm curious", to which Mraunac responded "are we off the record." Id. at 201:22-25.[3]

---

[3] During the August 21, 2026 conferral conference, Mraunac declared that he would file a Rule 11 motion against Counsel for Fisher if Fisher moved to disqualify him from deposing her. See D.E. 255 at 3 (Local Rule 37.2 Certification). Although two other topics personal to him were addressed in that same conferral conference (compelling further deposition testimony from Mraunac and disqualifying Mraunac from being trial counsel), it was only the prohibition on Mraunac personally deposing Fisher that prompted his Rule 11 declaration.

## ARGUMENT

Mraunac should be disqualified from participating as trial counsel because he is a necessary fact witness. Additionally, given his personal knowledge of this dispute and his (admitted) deep personal animosity towards Fisher, he should also be disqualified from deposing her as well.

**I. Mraunac should be disqualified from participating at trial as Counsel for GCM.**

A violation (or, potential forthcoming violation absent judicial intervention) of the advocate-witness rule warrants disqualification of a fact-witness from representing a party as its Counsel at trial. See Sicher v. Merrill Lynch & Co., 2009 U.S. Dist. LEXIS 115522, *4-5 (N.D. Ill. Dec. 11, 2019). Indeed, as the Seventh Circuit has set forth: "'The advocate-witness rule bars counsel from acting as both an advocate and a witness in a single proceeding except under special circumstances.'" Ewing v. 1645 West Farragut, LLC, 2020 U.S. Dist. LEXIS 193786, *2 (N.D. Ill. May 11, 2020) (quoting Petrilli v. Drechsel, 94 F.3d 325, 330 (7th Cir. 1996)). "The advocate-witness rule serves several purposes: (1) it eliminates the possibility that the attorney will not be a fully objective witness; (2) it reduces the risk that the trier of fact will confuse the roles of advocate and witness and erroneously grant testimonial weight to an attorney's arguments; and (3) it avoids the appearance of impropriety." Ewing, 2020 U.S. Dist. LEXIS 193786, *2 (internal quotes and citation omitted).

Further, the Northern District of Illinois applies Model Rule of Professional Conduct 3.7. See U.S. District Court for the Northern District of Illinois Local Rule 83.50 (stating that the Northern District of Illinois adopted "the Model Rules adopted by the American Bar Association"). And Model Rule 3.7 sets forth, *inter alia*, that "(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness" (albeit with a few exceptions, which will be addressed below).

For a lawyer to qualify as a necessary witness, it must be "likely that the lawyer will be called upon to provide testimony that is relevant[,]…material…[and] unobtainable elsewhere." See, e.g., Walton v. Diamond, 2012 U.S. Dist. LEXIS 177805, *6-8 (N.D. Ill. Dec. 14, 2012) (it appeared "[f]rom the complaint…that [the attorney] is the only witness who can testify to certain events alleged therein," such "as why he did or did not act in" a certain matter, and the "facts [were] particularly relevant and material" to the plaintiffs' allegations); accord, e.g., Ewing, 2020 U.S. Dist. LEXIS 193786, *3-4 (attorney's "testimony is crucial to plaintiffs' claims because he" was one of "the potential purchasers of the property" at issue in the lawsuit).

Here, Mraunac is one of the only (perhaps *the* only) GCM witness(es) with knowledge of the pre-litigation events that led to this lawsuit. In June 2020 (the time period giving rise to the events of this litigation), GCM had no employees; it only had two independent contractors, and Mraunac was one – serving during that period as Chief Operating Officer. See Ex. A: Mraunac Dep. at 40:11-23, 41:18-21. Mraunac is also the only GCM representative who can provide testimony about many of the material factual issues in this case. When it comes to some of GCM's primary factual allegations in the SAC – such as the phone conversation in which Hipaaline allegedly threatened to terminate GCM's access to the Leafwell platform and the impetus for creating the GCM-Hipaaline Agreement – Mraunac is the only witness available to testify to GCM's version of events. Additionally, Mraunac testified that he partook in the drafting of GCM's complaint as a witness (see Ex. A: Mraunac Dep. at 142:3-9) – meaning that he was the witness who personally supplied the factual allegations that ultimately made up GCM's SAC. Likewise, according to GCM's SAC, the GCM-Hipaaline Agreement (which is central to this case) was Mraunac's idea. See D.E. 187, ¶ 37. And, GCM has already put his role in that regard, and testimony to that effect, at issue in this case. Specifically, at the March 1, 2021 hearing, GCM's

Counsel objected to Fisher's testimony relating to Mraunac's role in the negotiation of GCM-Hipaaline Agreement, because it was "not at all how Jonathan Mraunac *would testify* that [it] happened." D.E. 85 at 52:18-25 (emphasis added). Clearly, Mraunac is GCM's key witness; he even admitted to that fact himself during his recent deposition when he declared: "I am GCM." Ex. A: Mraunac Dep. at 144:18-20.

And although Model Rule 3.7 excepts disqualification of a necessary witness in a few scenarios – where "(1) the testimony relates to an uncontested issue; (2) the testimony relates to the nature and value of legal services rendered in the case; or (3) disqualification of the lawyer would work substantial hardship on the client" – none of them apply here. Specifics are below:

Exception #1 – that the testimony relates to an uncontested issue – does not apply because the key factual issues that Mraunac is needed to testify about are contested. For instance, in the SAC, GCM alleged that Hipaaline threatened to terminate GCM's access to the Leafwell platform on a call with Mraunac, a fact which is in dispute. See D.E. 187: SAC, ¶ 138; D.E. 208: Fisher's Answer, ¶ 138. Additionally, Mraunac assisted in the formation of the SAC as a witness (see Ex. A: Mraunac Dep. at 142:3-9) supplying facts underlying its allegations – many of which are in dispute. See generally D.E. 208: Fisher's Answer. Finally, GCM's own Counsel already objected to Fisher's testimony about Mraunac's role in the negotiation of the GCM-Hipaaline Agreement – specifically because Mraunac would dispute Fisher's testimony when he tells GCM's version of the story. See D.E. 85 at 52:18-25.

Exception #3 – that disqualification would work a substantial hardship on the client – is inapplicable because GCM is represented by Phillip Nelson, William Ringhofer, and Trisha Rich from Holland & Knight (see D.E. 2, 67, 192) who have participated throughout these proceedings. And, when a party is represented by another attorney who has worked on the matter,

"disqualification" of the witness-attorney would not "work a substantial hardship" on that party. Ewing, 2020 U.S. Dist. LEXIS 193786 at *3-4.

And exception #2 – that the testimony relates to the nature and value of services rendered – is inapplicable as well. This exception only applies to legal services an attorney rendered *in the case* – as opposed to facts and events giving rise to the litigation, which is what Mraunac's testimony would concern here. See Ewing, 2020 U.S. Dist. LEXIS 193786 at *3 (disqualifying attorney who was a potential buyer for the property at issue prior to the litigation, where, *inter alia,* "the testimony [did] not relate to the legal services [the attorney] rendered in this case"). Indeed, the comment to Model Rule 3.7 confirms that this exception applies only in situations in which precluding a lawyer from testimony would be likely to result in a subsequent trial about his services *in the case*. See M.R. 3.7, Cmt. 3 ("Paragraph (a)(2) recognizes that where the testimony concerns the extent and value of legal services rendered in the action in which the testimony is offered, permitting the lawyers to testify avoids the need for a second trial with new counsel to resolve that issue." (emphasis added)). Here, any testimony Mraunac will provide relates to events giving rise to this litigation; the expected testimony would not pertain to the legal services he rendered in the case. For instance, GCM's allegation – that Hipaaline threatened to terminate GCM's access to the Leafwell platform during a call with Mraunac – happened prior to this litigation, and does not relate to any services Mraunac provided in this instant case. See D.E. 187: SAC, ¶ 138. Additionally, Mraunac supplied facts underlying the allegations in GCM's SAC as a witness and those facts occurred prior to the litigation, so the testimony about those facts will not relate to legal services Mraunac rendered in this current action. See Ex. A: Mraunac Dep. at 142:3-9; see generally D.E. 187: SAC. Moreover, many of the facts Mraunac will testify about relate to his role

as GCM's Chief Operating Officer instead of his role as General Counsel; Mrauanc was the Chief Operating Officer in June 2020 (the period of time relevant to this lawsuit).

So ultimately, where none of the exceptions apply, and Mraunac is a necessary fact witness who will testify about contested, material issues, it follows that he should be disqualified from participating at trial as Counsel for GCM.

**II. Mraunac should be disqualified from taking Fisher's deposition.**

Moreover, given Mraunac's clear admitted hatred for Emily Fisher (as well as his recent implied threat about his apparent intention to make her deposition miserable for her), Mraunac should also be disqualified from deposing Emily Fisher insofar as she testifies at any point in this case – including, in particular, her deposition.[4]

In addition to Model Rule 3.7's requirements relating to trial, courts impose further disqualification measures where the attorney is (i) likely to be a key fact witness with important knowledge of the facts underlying the dispute, and/or (ii) where other circumstances justify disqualification, such as personal animosity toward a deponent. Instructive on the issue is this Court's decision in Bauman v. Law Off. of the Cook Cnty. Pub. DEF., 2024 U.S. Dist. LEXIS 249099, at *7-9 (N.D. Ill. Sep. 24, 2024). There, the plaintiff's attorney (also a potential witness in the case) had been involved in a prior dispute with the defendants – including the deponent – in a manner and context that was material to the factual allegations in the case. Id. at *3-4, 7-8. The defendant moved to disqualify the attorney acting as Counsel at trial and from taking a defendant-witness' deposition – both because the attorney was possibly a necessary witness at trial, and because attorney had admitted there was "personal animosity between himself and [the deponent]."

---

[4] Although Mraunac examined Fisher in front of Judge Ellis on March 19, 2021, see D.E. 87, the fact that this occurred more than five years ago, in front of a Judge, prior to Mraunac making it known how much he hates Fisher, and prior to his recent failing to demonstrate professionalism in his own deposition, does not preclude the relief requested in this Motion.

Id. at *7-8. Given that, this Court precluded the attorney-witness from taking another defendant-witness's deposition due to that attorney's "personal knowledge of the dispute and his own admissions about personal animosity between himself and [the witness]." Id. at *7-9. Likewise, in Dunn v. Palmira Golf & Country Club, Inc., the U.S. District Court for the Northern District of Indiana disqualified an attorney from taking depositions because of the attorney's "personal knowledge of the events at the core of th[e] case." 2018 U.S. Dist. LEXIS 173911, *4-7 (N.D. Ind. Oct. 9, 2018) (explaining that the attorney was "one of only two occurrence witnesses to the incident which forms the basis for the complaint" and would provide his own testimony "related to the very contested issue that is at the center of the case from a unique perspective").

Other courts have precluded participation of attorney-witnesses in depositions where such participation would become apparent to the trier of fact. This makes sense because according to Fed. R. Civ. P. 30(c)(1), "[t]he examination and cross-examination of a deponent" should "proceed as they would at trial under the Federal Rules of Evidence" and attorney-witnesses are precluded from acting as Counsel at trial under Model Rule 3.7. For instance, in Williams v. Borden Chem., Inc., the U.S. District Court for the Southern District of Iowa held that "it [was] appropriate to disqualify [an attorney-witness] from conducting or appearing at depositions" because "[d]epositions may be offered into evidence at trial and if [the attorney] is the one taking the deposition, or appears at the deposition to defend or for some other purpose, there is a risk that the offer of the deposition at trial would reveal [the attorney's] dual role to the fact-finder, thus implicating the concern over fact-finder confusion at the heart of the advocate-witness rule." 501 F. Supp. 2d 1219, 1222 n.5 (S.D. Iowa 2007).

Here, there is little dispute about Mraunac's disdain for Fisher. In fact, he was quite forthcoming about it during, *inter alia,* his deposition – in which he called her a terrible person,

greedy, opportunistic, a fraudster, and a scammer. See Ex. A: Mraunac Dep. at 133:11 ("I think she's a terrible person"); Id. at 141: 16-18 ("I think that she's greedy and opportunistic."); Id. at 133:7 ("she's a fraudster"), Id. at 113:16-17 ("she needed a new physician to scam"). He accused her of acting like "a maniac." Id. at 137:6-12. He said he hoped that she was being criminally investigated (id. at 133:21-23), that "she uses people and discards them," (id. at 133:8-9), and that he was glad he never met her in-person (id. at 130:21-23).

Perhaps even more concerning is the fact that, near the end of his deposition – unprompted – Mraunac threatened that Fisher's deposition will be "different" than his own. Id. at 201:20-21. Although he refused to elaborate on the record (see id. at 201:22-25), the subtext was clear – he seemingly intends to make her deposition as uncomfortable as possible. Fisher's Counsel inquired, "How so?" and "I'm curious", to which Mraunac responded "are we off the record?" Id. at 201:22-25.

Moreover, Mraunac is the only GCM fact witness who can testify about material factual allegations in the SAC. See, e.g., D.E. 187: SAC ¶¶ 37, 81, 116, 138. On top of the personal animosity for Fisher, such a high degree of direct knowledge and involvement, together with his personal stake in the case, together with the fact that he is the only witness who will be able to testify to many of GCM's key allegations, should suffice to preclude him from taking Fisher's deposition.

Moreover, because Mraunac would not be able to examine Fisher at trial due to disqualification, he also should not act as counsel at Fisher's deposition. Federal Rule of Civil Procedure (30)(c)(1) requires that depositions proceed as though the deponent were being examined at trial as a witness. See Fed. R. Civ. P. 30(c)(1) ("[t]he examination and cross-examination of a deponent" should "proceed as they would at trial under the Federal Rules of

Evidence."). So, a non-disqualified attorney (who could examine Fisher at trial) should take Fisher's deposition – not Mraunac. In addition, if Mraunac takes Fisher's deposition, "there is a risk that the offer of the [Fisher's] deposition at trial would reveal [Mraunac's] dual role to the factfinder, thus implicating the concern over factfinder confusion at the heart of the advocate-witness rule." Williams, 501 F. Supp. 2d at 1222 n.5. Thus, to avoid potential confusion to the trier of fact, Mraunac should be prevented from deposing Fisher.

So ultimately, given Mraunac's deep-seeded personal animosity toward Fisher, and his personal knowledge of, and personal stake in, this case, it follows that he should be disqualified from taking Fisher's deposition.

## CONCLUSION

For these reasons, Emily Fisher respectfully requests that this Court disqualify Jonathan Mraunac from (i) participating at trial as Counsel, and also (ii) from eliciting testimony from Fisher insofar as she might ever testify at any point in this case – including, most saliently, at her upcoming deposition.

Date: August 25, 2026

Respectfully Submitted
on Behalf of Emily Arida Fisher,

*/s/ Jeffrey Butler*
Jeffrey Butler, Esq.
Illinois State Bar No. 6343082
Jeffrey.Butler@HaynesBoone.com
HaynesBoone LLP
1 Financial Center
Suite 1100
Boston, MA 02111

Paul Lewis, Esq.
*Admitted Pro Hac Vice*
Paul.Lewis@HaynesBoone.com
HaynesBoone LLP
1 Financial Center
Suite 1100
Boston, MA 02111

Brett Walker, Esq.
*Admitted Pro Hac Vice*
Brett.Walker@HaynesBoone.com
HaynesBoone LLP
1 Financial Center
Suite 1100
Boston, MA 02111

**CERTIFICATE OF SERVICE**

I hereby certify that, on August 25, 2026, I served the foregoing document via electronic mail on all counsel of record registered in this matter on the ECF system for the United States District Court for the Northern District of Illinois, as follows:

Trisha M. Rich
Phillip W. Nelson
William A. Ringhofer
Holland & Knight LLP
150 N. Riverside Plaza, Suite 2700
Chicago, IL 60606
Trisha.Rich@hklaw.com
Phillip.Nelson@hklaw.com
William.Ringhofer@hklaw.com

Jonathan Mraunac
JMraunac@gcmp.us

By: */s/ Jeffrey Butler*
Jeffrey Butler (IL Bar No. 6343082)