**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| GCM PARTNERS, LLC, an Illinois limited liability company,<br><br>Plaintiff/Counter-Defendant,<br><br>v.<br><br>ONLINE MD LTD. and EMILY ARIDA FISHER,<br><br>Defendants/Counter-Plaintiffs. | Case No. 1:20-cv-06401<br><br>Hon. Georgia N. Alexakis |

**GCM PARTNERS, LLC'S RESPONSE IN OPPOSITION TO DEFENDANT EMILY ARIDA FISHER'S MOTION TO COMPEL FURTHER DEPOSITION TESTIMONY FROM JONATHAN MRAUNAC AND FOR ATTORNEY'S FEES**

**Preliminary Statement**

Plaintiff/Counter-Defendant GCM Partners, LLC ("GCM") respectfully submits this Response in Opposition to Defendant Emily Arida Fisher's ("Fisher") Motion to Compel Further Deposition Testimony from Jonathan Mraunac and For Attorney's Fees (D.E. 252 and 253) (the "Motion"). Fisher's Motion vastly overstates the scope of Jonathan Mraunac's ("Mraunac") non-responsiveness at his deposition on August 6, 2026, and ignores the legitimate legal bases for many of his objections.

While GCM does not dispute the general principle that a deponent should answer questions subject to objection, the approximately 70 questions Fisher catalogs in her Motion were not ordinary factual inquiries. The vast majority of Fisher's questions fell into a recognized category of improper deposition questioning: they asked Mraunac to interpret contractual provisions, opine on data ownership as a legal matter, characterize the scope of contractual duties, distinguish between legal theories of individual and corporate liability, and define legal terms such as "trade secrets" and "proprietary information." They call, in other words, for legal conclusions — questions appropriate for the Court to answer, not for a fact witness at a deposition.

GCM acknowledges that the deposition was contentious and the nature of Mraunac's dual role as a GCM member and counsel of record is unusual. If the Court concludes that some of the identified questions are proper for a fact witness to answer and within the scope of relevance for this action, GCM is prepared to produce Mraunac for a continued deposition at which Holland & Knight counsel will defend the deposition and Mraunac will answer properly framed factual questions. However, Fisher's blanket demand that Mraunac answer all of the approximately 70 questions — many of which were genuinely improper — should be rejected, and Fisher's request for fees and sanctions should be denied because Mraunac's objections were substantially justified.

## Legal Standard

Federal Rule of Civil Procedure 37(a) provides that a party may move to compel discovery if a deponent fails to answer a question at deposition. Fed. R. Civ. P. 37(a)(3)(B)(i). If the motion is granted, the court, in considering whether to award expenses, weighs whether the movant attempted good-faith resolution, whether the objections were "substantially justified," and whether the circumstances make an award of expenses unjust. Fed. R. Civ. P. 37(a)(5)(A).

Rule 30(c)(2) provides that objections are noted on the record and the examination proceeds, with the deponent answering subject to the objection. A person may instruct a deponent not to answer "only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." Fed. R. Civ. P. 30(c)(2). These limitations are well established. *See Redwood v. Dobson*, 476 F.3d 462, 467–69 (7th Cir. 2007).

However, the rule does not exist in a vacuum. Courts in this Circuit and elsewhere recognize that the obligation to answer is not absolute and that important exceptions apply. Specifically, federal courts have held that deposition questions calling for legal conclusions may properly be refused. *See Quiksilver, Inc. v. Kymsta Corp.*, 247 F.R.D. 579, 584–85 (C.D. Cal. 2007) ("since plaintiff's objections of 'legal conclusion' were proper, the witnesses need not answer these questions") (citing *United States v. Crawford*, 239 F.3d 1086, 1090 (9th Cir. 2001), *cert. denied*, 534 U.S. 972 (2001) and *Evangelista v. Inlandboatmen's Union of the Pac.*, 777 F.2d 1390, 1398 n.3 (9th Cir. 1985)); *see also DTI Software, Inc. v. Am. Airlines, Inc.*, No. 4:22-cv-00796-O, 2023 WL 6536147, at *2 (N.D. Tex. Sept. 1, 2023) (declining to compel second Rule 30(b)(6) deposition because "[q]uestions pertaining to a relevant subject matter that ask the lay corporate witness to provide a legal conclusion are prohibited") (citing *United States v. Williams*, 343 F.3d 423, 435 (5th Cir. 2003) (explaining that "Rule 704(a) 'does not allow a witness to give legal conclusions'") (citation omitted)).

The Seventh Circuit itself has recognized that refusing to answer certain deposition questions may be justified in appropriate circumstances. *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 903 (7th Cir. 1981) ("Some questions of doubtful relevancy may be innocuous and nothing is lost in answering, subject to objection, except time. That is the general rule. Other irrelevant questions, however, may unnecessarily touch sensitive areas or go beyond reasonable limits as did some of the race questions propounded [here]. In such an event, refusing to answer may be justified. . . . There is no more need for a deponent to seek a protective order for every question when a dispute arises than there is a need to seek to compel an answer for each unanswered question."); *see also Whitechurch v. Canton Marine Towing Co., Inc.*, No. 16-cv-3278, 2017 WL 11451354, at *4 (C.D. Ill. Dec. 14, 2017) ("The Court will not require [a party] to have a witness testify as to a legal conclusion."); *Gingerich v. City of Elkhart Probation Dept.*, 273 F.R.D. 532, 537 (N.D. Ind. 2011) ("opposing parties cannot be compelled to respond to interrogatories that call for pure legal conclusions").

## **Argument**

### I. Mraunac's Legal-Conclusion Objections Were Substantially Justified.

The central dispute with respect to the Motion is whether Mraunac could properly decline to answer deposition questions that called for legal conclusions. GCM's position is straightforward: Mraunac properly distinguished between factual questions, which he answered, and legal-conclusion questions, which he properly declined to answer. Fisher herself recognizes this distinction, noting that "Mraunac seemed to draw a line between what he considered to be factual questions and legal questions." D.E. 253 at 4. That is precisely the distinction that cases like *Quiksilver*, *Whitechurch*, and *Gingerich* recognize.

### A. Courts Recognize That Deposition Questions Calling for Legal Conclusions May Properly Be Refused.

Multiple federal courts have held that a lay witness may not be compelled to testify to legal conclusions at deposition. Further, as the Seventh Circuit observed in *Eggleston*, some circumstances regarding good-faith disputes between parties as to the propriety of certain deposition questions require a flexible approach:

> We believe it would be difficult to fashion a hard and fast rule to apply to all situations which did not at times have impractical side effects. Depositions cannot be taken in the judge's reception room so that the judge always will be readily available to either counsel. . . .
>
> There is no more need for a deponent to seek a protective order for every question when a dispute arises than there is a need to seek to compel an answer for each unanswered question. If a particular question is important or opens up a whole area of questionable relevance, or other serious problems develop which counsel cannot solve themselves, then resorting to the court may be justified or necessary. . . .
>
> It may be more practical in some situations to accumulate the unresolved problems so as not to be constantly interrupting a deposition to run to an overworked judge. If it appears that there is a significant disagreement about discovery, it may also be worthwhile to seek a discovery conference under [then] new Rule 26(f). . . . Each counsel has the responsibility to attempt to resolve conflicts. Different situations may require different steps to be taken. When the court's aid is sought the matter must be fairly and fully presented.

*Eggleston*, 657 F.2d at 902-04. Here, Fisher's counsel could have contacted the court during the deposition about Mraunac's failure to answer certain questions; they chose not to. Instead, the questions were accumulated, with the deposition proceeding for approximately five hours. Subsequently, the parties met and conferred, reviewed the questions Mraunac did not answer, and reached an impasse about whether those questions are properly in the scope for which a fact witness may be compelled to testify. GCM believes that cases such as *Quiksilver*, *Whitechurch*, and *Gingerich* all stand for the proposition that compelling testimony that calls for legal conclusions is inappropriate and outside the scope of the rules.

In *Quiksilver*, the defendant moved to compel answers to 54 deposition questions. *Quiksilver*, 247 F.R.D. at 583. The court denied the motion as to *53 of the 54 questions,* including as to *all 17 questions* to which a legal-conclusion objection was made. *See id.* at 586, Table 1. Although the court found that attorney-client privilege objections were not well taken, it sustained the other objections, holding: "[D]efendant repeatedly asked questions improperly seeking their legal or expert opinions" and "since plaintiff's objections of 'legal conclusion' were proper, the witnesses need not answer these questions." *Id.* at 585. Similarly, in *Whitechurch*, the plaintiff sought to compel Rule 30(b)(6) deposition testimony with respect to a deposition topic that "alleges a legal conclusion of reasonable reliance" of the defendant as asserted in one of its counterclaims. *Whitechurch*, 2017 WL 11451354, at *4. Stating that, "[t]he Court will not require [a party] to have a witness testify as to a legal conclusion," it issued a protective order to bar the deposition on this topic. *Id.* (citing, among others, *Hubble v. Rice*, No. 1:04-cv-967-SEB-JPG, 2006 WL 2540310, at *2 (S.D. Ill. Aug. 29, 2006) (legal arguments are conclusions, not facts to which a person can testify)). Finally, in *Gingerich*, the court refused to compel a defendant to respond to an interrogatory that asked the defendant to confirm that it was the proper party to the suit, a pure legal conclusion. *Gingerich*, 273 F.R.D. at 537.

**B. Mraunac's Specific Legal-Conclusion Objections Were Well-Taken.**

Many of the approximately 70 questions Fisher catalogs genuinely sought legal conclusions. They can be grouped into the following thematic categories:

**1. Questions asking Mraunac to interpret the GCM-Hipaaline Agreement**

Fisher's counsel repeatedly asked Mraunac to interpret specific provisions of the GCM-Hipaaline Agreement—a written contract attached to the Second Amended Complaint. These included: whether GCM "owned the data" (D.E. 253, Ex. A at 87:4–19); the difference between "Proprietary Information" and "Confidential Information" and "data" (*id.* at 154:9–155:3); what

duties the Agreement assigned to Hipaaline versus Fisher (*id.* at 168:19–23); whether Hipaaline had a duty and what its scope was (*id.* at 169:22–170:5); and the definition of a patient (*id.* at 153:8–13). These are textbook legal conclusions—they ask the deponent to interpret a written contract, which is the Court's province. *See, e.g., Crawford*, 239 F.3d at 1090 (a lay witness may not "testify as to a legal conclusion, such as the correct interpretation of a contract").

**2. Questions asking Mraunac to define legal terms**

Fisher's counsel also asked Mraunac to define "trade secrets" (D.E. 253, Ex. A at 143:17–144:12) and to distinguish between categories of legally defined information. Fisher concedes that "trade secrets" is not a defined term in the Agreement (D.E. 253 at 6), which only reinforces the legal-conclusion nature of the question: Fisher was asking Mraunac to apply a legal concept — the definition of "trade secrets" under the Illinois Trade Secrets Act — to the facts of this case. That is quintessentially an expert opinion or legal conclusion. Mraunac properly declined to act as GCM's expert witness or draw legal conclusions.

**3. Questions asking Mraunac to distinguish between legal theories of liability**

Fisher's counsel asked Mraunac: "How do you distinguish the wrongdoings visited upon GCM by Emily Fisher the individual versus Emily Fisher who was the CEO of Hipaaline and the CEO of Online MD?" D.E. 253, Ex. A at 175:18–176:13. This question asks Mraunac to parse the legal theories of individual liability versus corporate-officer liability — a legal question that the Court itself addressed in its Opinion of September 5, 2025 (D.E. 199), when analyzing the corporate-officer privilege. Mraunac's refusal to opine on this legal distinction was proper.

**4. Questions asking Mraunac to explain legal positions in the Second Amended Complaint**

Fisher's counsel repeatedly asked Mraunac to explain or characterize GCM's legal positions as stated in the SAC. *See, e.g.*, D.E. 253, Ex. A at 85:15–86:20, 120:16–25, 183:15–

184:4, 193:8–24. These seek legal contentions, not facts. A deponent is not required to parrot back or elaborate on the legal theories set forth in a pleading.

**5. Questions asking Mraunac to characterize or interpret other agreements and relationships.**

Fisher's counsel asked Mraunac to characterize the relationship between Hipaaline and the Leafwell platform (D.E. 253, Ex. A at 173:9–174:14) and sought his interpretation of the definition of "company" in various agreements (*id.* at 104:3–105:5). Fisher argues that the Leafwell platform is not addressed in the Agreement (D.E. 253 at 8), but the questions posed by Fisher's counsel at the deposition still asked Mraunac to characterize a legal relationship — which is a legal conclusion, not a factual one. The factual question would be "what did Hipaaline do with the Leafwell platform?" — not "what was Hipaaline's relationship to the Leafwell platform?" Further, notwithstanding the assertions of Fisher's counsel, the Leafwell platform is indeed addressed in the Agreement. D.E. 187, Ex. 2, § 7.5 (p.140/161).

## II. Mraunac's Relevance Objections Were Justified for Certain Questions.

While GCM acknowledges that relevance alone ordinarily does not justify a refusal to answer at deposition, the Seventh Circuit has recognized that in some circumstances, refusing to answer irrelevant questions may be warranted:

> Relevancy, although mentioned in the rule along with privilege, does not necessarily deserve the same respect. Rule 30(c), Fed.R.Civ.P., says the evidence should be taken subject to the objection. Some questions of doubtful relevancy may be innocuous and nothing is lost in answering, subject to objection, except time. That is the general rule. Other irrelevant questions, however, may unnecessarily touch sensitive areas or go beyond reasonable limits. . . . In such an event, refusing to answer may be justified.

*Eggleston*, 657 F.2d at 903. This is directly on point: the Seventh Circuit held that in some circumstances, refusing to answer irrelevant deposition questions may be justified — even outside the privilege context. *See also Dapron v. Spire, Inc. Retirement Plans Committee*, 329 F.R.D. 223,

228 (E.D. Mo. 2019) (denying motion to compel testimony where "[plaintiff] seeks to elicit the discovery of non-relevant information"); *Bombardier Recreational Prods., In. v. Artic Cat, Inc.*, No. 12-cv-2706, 2014 WL 10714011, at *14 (refusing to compel deposition testimony where "[plaintiff] has failed to demonstrate that the information . . . is relevant to—or may lead to the discovery of information relevant to—any claim or defense at issue in the present case"). Certain of Mraunac's relevance-based refusals fell into this category.

**A. Compensation and equity questions**

Fisher's counsel asked about Mraunac's personal compensation and equity stake in GCM. (D.E. 253, Ex. A at 71:19–72:11, 97:15–25). While Fisher contends these go to potential bias, Mraunac's compensation structure is not relevant to any claim or defense, and the questions unnecessarily intrude on sensitive personal financial information. Discovery must be proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1); *see, e.g., Klein v. Checker Motors Corp.*, 87 F.R.D. 5, 6 (N.D. Ill. 1979) (declining to compel discovery of plaintiff's assets and financial information as irrelevant).

**B. Other lawsuits**

Fisher's counsel asked about other lawsuits where Mraunac was a *pro se* plaintiff, purportedly to understand "how it is that you assess damages." D.E. 253 at 7; Ex. A at 198:15-200:19. Let us call a spade a spade: this is mere pretext. Fisher's interest in Mraunac's *pro se* litigation as a plaintiff — against individuals he asserted used online dating websites to commit intentional torts against him and have him suspended from those sites — has nothing to do with how he "assess[es] damages." The true utility of such a line of questioning is to make the deposition process uncomfortable, and perhaps embarrassing, for Mraunac. This is borne out by questions that had *nothing* to do with "damages", as Fisher's counsel asked Mraunac whether he had obtained restoration of access to the online dating platforms and whether he was using dating

platforms other than those to which he lost access. D.E. 253, Ex. A at 193:24 to 200:10. Perhaps, too, Fisher hopes that she will find a way to introduce the subject at trial, in an effort to embarrass Mraunac there or to discredit him, somehow, in front of a jury. One witness's approach to calculating his own damages in an unrelated, purely personal, and altogether different sort of lawsuit has no bearing on GCM's damages theory in this case. These questions go "beyond reasonable limits" within the meaning of *Eggleston*. *Eggleston*, 657 F.2d at 903; *see also* ABA Model R. of Pro. Conduct, R. 4.4 ("In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such a person."); Ill. R. Pro. Conduct (2010), R. 4.4 (same). Where Fisher actually asked Mraunac about GCM's calculation of its damages in this case, Mraunac answered those questions to the best of his knowledge and ability. D.E. 253, Ex. A at 183:14 to 195:24.

## III. Mraunac's Other Objections Were Reasonable.

Fisher catalogs additional refusals based on vagueness (*e.g.,* D.E. 253, Ex. A at 10:4-6, 22:20–21, 25:10–11, 28:3–7, 29:17–21, 45:24–46:2, 54:11-12, 58:4-6, 77:22–78:2, 94:2–5, 94:12–13, 109:16–21, 144:21–24, 172:17–20), argumentative questions (*id.* at 122:4–9), asked-and-answered (*id.* at 49:8–12), and hypothetical questions (*id.* at 182:22–1833:3, 192:8–12). GCM acknowledges that these objections, standing alone, would not ordinarily justify a refusal to answer under Rule 30(c)(2). However, several considerations mitigate the significance of the lack of a responsive answer to these questions.

**First**, many of the "vague" questions overlapped with the legal-conclusion questions. A question that is both vague and calls for a legal conclusion — such as asking a deponent to characterize complex contractual relationships without specifying the scope of the inquiry — is

objectionable on multiple grounds. The fact that Mraunac also raised vagueness does not negate the validity of his legal-conclusion objection.

**Second**, many of the alleged "refusals" Fisher identifies were instances where Mraunac objected and then simply failed to provide a responsive answer — not instances where he affirmatively refused to answer. Fisher herself distinguishes between the approximately 36 instances where Mraunac "failed to provide an answer" after objecting and the approximately 33 instances where he "expressly stated on record his refusal to answer." D.E. 253 at 2–4. The former category may reflect the natural confusion of a contentious deposition rather than willful obstruction and Fisher's counsel's failure to properly follow up on those answers it felt were non-responsive.

## IV. Fisher's Cited Cases Are Distinguishable

### 1. *Specht v. Google, Inc.*

Fisher relies heavily on *Specht v. Google, Inc.*, 268 F.R.D. 596 (N.D. Ill. 2010). But *Specht* is distinguishable in a critical respect: the misconduct in *Specht* was committed by the *defending attorney*, who made "numerous, extensive, and repeated speaking objections" and instructed the deponent not to answer "clearly non-privileged issues." *Id.* at 597–99. The questions in *Specht* sought *factual* bases for representations in court filings — not legal interpretations of contracts. Moreover, in *Specht*, the attorney made privilege-based objections that were found to be pretextual. Here, Mraunac invoked privilege in response to only seven questions, four of which included other bases of objection, and only one of which included legal-conclusion as a basis (D.E. 253, Ex. A at 85:21-24); he transparently stated that his objection was that the questions called for legal conclusions. That is a qualitatively different objection from the evasive, pretextual privilege claims at issue in *Specht*.

**2. *Berry v. Ford Modeling Agency***

In *Berry v. Ford Modeling Agency*, No. 09-cv-8076, 2011 WL 13551979, 2011 U.S. Dist. LEXIS 175852 (N.D. Ill. Apr. 25, 2011), the instruction not to answer was based on relevance, not legal conclusions. GCM does not contend that a blanket relevance objection justifies refusal to answer, and the relevance objections were limited here and applied to questions well outside the appropriate scope of the deposition, as noted above. *Berry* does not address the legal-conclusion objection that is at the heart of this dispute.

**3. *Patterson v. Burge***

*Patterson v. Burge*, No. 03-C-4433, 2007 WL 1317128, 2007 U.S. Dist. LEXIS 33102 (N.D. Ill. May 4, 2007), stands for the general proposition that deposition questions must be answered notwithstanding an objection. GCM does not dispute this general rule. But *Patterson* did not address the specific question of whether legal-conclusion questions must be answered. The case's broad language does not override the more specific holdings of *Quiksilver* and the other cases cited here, which directly address and sustain legal-conclusion objections in contexts such as these.

**4. *United Nat'l Records v. MCA, Inc.***

Fisher cites *United Nat'l Records, Inc. v. MCA, Inc.*, 106 F.R.D. 39 (N.D. Ill. 1985), for the proposition that a witness serving as "both a lawyer making objections . . . and as judge ruling on his own objections" is improper. *Id.* at 41. GCM acknowledges that Mraunac's self-representation at his deposition created challenges for Fisher, particularly with the way Fisher's counsel chose to frame many of the questions. GCM proposes that Holland & Knight counsel defend any further deposition of Mraunac, thereby eliminating this concern. To the extent the Court concludes that any of the non-legal-conclusion questions identified by Fisher were "in bounds," such that they warrant a further deposition of Mraunac, the solution is to have separate

counsel defend the deposition going forward, but the rarity of Mraunac acting as his own lawyer at the deposition does not justify compelling Mraunac to answer improper legal-conclusion questions now.

**5. *Other Cases***

Fisher also cites *BP Amoco v. Flint Hills Res.*, No. 05-C-5661, 2009 U.S. Dist. LEXIS 131274 (N.D. Ill. Feb. 11, 2009), and *Medline Indus. v. Sullivan*, No. 08-C-5867, 2009 WL 3242299, 2009 U.S. Dist. LEXIS 93970 (N.D. Ill. Oct. 6, 2009), for the proposition that attorney's fees should be awarded when improper instructions not to answer are given. Both cases involved instructions not to answer based on relevance or privilege — not legal-conclusion objections. Neither case addresses the propriety of refusing to answer questions that genuinely seek legal conclusions. Fisher's citation to *Curry v. Rambo*, No. 22-cv-1237, 2025 U.S. Dist. LEXIS 271333 (C.D. Ill. Dec. 29, 2025), is particularly inapt: that case involved a pro se plaintiff who engaged in "abusive, unreasonable, and bad-faith litigation misconduct" during his deposition, including refusal to answer any questions at all. Mraunac's conduct bears no resemblance to the wholesale obstruction at issue in *Curry*. Finally, Fisher's quotation of *Dunn v. Palmira Golf & Country Club, Inc.*, No. 2018 U.S. Dist. LEXIS 173911, at *7 (N.D. Ind. Oct. 9, 2018) misapplies that case. In *Dunn*, the attorney in question was found to be a necessary witness because he was "one of only two occurrence witnesses to the incident which forms the basis for the complaint." *Id.* at 4. No such finding as to Mraunac has been made here, and GCM emphatically challenges Fisher's assertion on this point to the contrary. GCM will address that issue in the context of responding to Fisher's motion to disqualify Mraunac to act as an attorney in this case (D.E. 255), which suffers from fundamental infirmities, both in its characterization of the facts and its application of the law.

**B. GCM Offers a Reasonable Resolution**

GCM acknowledges that for some of the questions Fisher identifies, they could have been worded to seek legitimate factual information. It was not Mraunac's role, however, to re-word improperly phrased questions by Fisher's counsel. GCM is willing to produce Mraunac for a continued deposition to answer properly framed factual questions. Mraunac will answer non-privileged questions about facts within his personal knowledge: what he observed; what he did; what he communicated; what he understood at the time of relevant events; and what role various parties played in the underlying transactions, as a factual matter. Mraunac should not be compelled to interpret contractual provisions, opine on legal theories, or characterize the legal significance of events. Those are questions for the Court to decide at summary judgment or trial. Holland & Knight, as counsel to GCM, will attend any continued deposition to defend the examination, eliminating the dual-role concerns raised by Fisher and the court in *United Nat'l Records*. GCM proposes that the continued deposition be limited in scope to the relevant factual questions that remain unanswered, if any, and that the parties confer in advance to identify the specific questions that are genuinely in dispute so as to avoid further unnecessary motion practice. This concession moots Fisher's Motion and eliminates any basis for sanctions. Where an opposing party's objections were "substantially justified," fees must not be awarded. Fed. R. Civ. P. 37(a)(5)(A)(ii) and (iii) ("other circumstances make an award of expenses unjust").

**C. Sanctions and Attorney's Fees Are Not Warranted**

Under Rule 37(a)(5)(A)(ii), sanctions must not be awarded if "the opposing party's nondisclosure, response, or objection was substantially justified." An objection is substantially justified if "reasonable people could differ as to the appropriateness of the contested action." *Devaney v. Cont'l Am. Ins. Co.*, 989 F.2d 1154, 1163 (11th Cir. 1993). As noted above, multiple courts have sustained legal-conclusion objections to fact discovery. Mraunac's position has

substantial support in case law. Mraunac did not obstruct the deposition in bad faith, and GCM is not stonewalling. Mraunac will sit for a continued deposition, defended by Holland & Knight counsel, and will answer ***factual*** questions, to the extent the Court finds any remain to be answered. Rule 37(a)(5)(A)(iii) provides that sanctions are inappropriate where "other circumstances make an award of expenses unjust." GCM's good-faith efforts here constitute such a circumstance.

Finally, it is worth discussing the way in which the deposition was conducted. Fisher's counsel asked dozens of questions that genuinely called for legal interpretations of the Agreement and its terms, then cataloged every non-response as a "refusal" without acknowledging the legitimate basis for many objections. Fisher's approach of filing an 18-page motion cataloging approximately 70 questions, many of which were genuinely improper, is itself disproportionate. Moreover, Fisher's counsel was aware that Mraunac was representing himself and chose to press forward with legal-conclusion questions rather than reframing them as factual inquiries. A large measure of responsibility for the deposition's contentiousness lies with Fisher's counsel's chosen approach to the examination. The Seventh Circuit's observation in *Eggleston* quoted above is apt: "There is no more need for a deponent to seek a protective order for every question when a dispute arises than there is a need to seek to compel an answer for each unanswered question." *Eggleston*, 657 F.2d at 903. The deposition difficulties in this case were, at best, a two-way street.

[*Concluded on the following page.*]

## Conclusion

For the foregoing reasons, GCM Partners, LLC respectfully requests that the Court: (i) deny the Motion; (ii) to the extent the Court finds the Motion seeks properly framed, relevant, factual testimony, order a continued deposition under reasonable conditions, with Holland & Knight counsel defending; (iii) deny Fisher's request for attorney's fees and costs under Rule 37(a)(5)(A) and sanctions under Rule 30(d)(2) because Mraunac's objections were substantially justified, and GCM's willingness to produce Mraunac makes an award of expenses unjust; and (iv) grant GCM such other and further relief as the Court deems just and proper.

Dated: September 16, 2026

Respectfully submitted,

GCM Partners, LLC

By: */s/Phillip W. Nelson*
One of Its Attorneys

Trisha M. Rich
Phillip W. Nelson
William A. Ringhofer
HOLLAND & KNIGHT LLP
150 N. Riverside Plaza, Suite 2700
Chicago, Illinois 60606
Telephone: 312.263.3600
Facsimile: 312.578.6666
Email: trisha.rich@hklaw.com
phillip.nelson@hklaw.com
william.ringhofer@hklaw.com

*Attorneys for Plaintiff/Counter-Defendant GCM Partners, LLC*

## CERTIFICATE OF SERVICE

I, Phillip W. Nelson, an attorney, hereby certify that on September 16, 2026, I caused a true and correct copy of the foregoing *GCM Partners, LLC's Response in Opposition to Defendant Emily Arida Fisher's Motion to Compel Further Deposition Testimony from Jonathan Mraunac and For Attorney's Fees* to be served via the Court's CM/ECF system upon all counsel of record, including:

- Kevin M. Bergin (kevin.bergin@haynesboone.com)
- Jeffrey Alexander Butler (jeffrey.butler@haynesboone.com)
- Paul B. Lewis (paul.lewis@haynesboone.com)
- Jonathan Michael Mraunac (jmraunac@amundsendavislaw.com, docketgeneral@amundsendavislaw.com, jmraunac@gmail.com, aduenas@amundsendavislaw.com)
- Phillip W Nelson (phillip.nelson@hklaw.com, hapi@hklaw.com)
- Trisha Michelle Rich (trisha.rich@hklaw.com, jmraunac@gcmp.us, trish.balnius@hklaw.com, hapi@hklaw.com)
- William A. Ringhofer (william.ringhofer@hklaw.com, trish.balnius@hklaw.com, hapi@hklaw.com)
- Brett Walker (Brett.Walker@HaynesBoone.com)

*/s/Phillip W. Nelson*
Phillip W. Nelson