**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| GCM PARTNERS, LLC, an Illinois limited liability company,<br><br>Plaintiff/Counter-Defendant,<br><br>v.<br><br>ONLINE MD LTD. and EMILY ARIDA FISHER,<br><br>Defendants/Counter-Plaintiffs. | Case No. 1:20-cv-06401<br><br>Hon. Georgia N. Alexakis |

**GCM PARTNERS, LLC'S RESPONSE IN OPPOSITION TO DEFENDANT EMILY ARIDA FISHER'S MOTION TO DISQUALIFY JONATHAN MRAUNAC AS TRIAL COUNSEL AND FROM TAKING EMILY ARIDA FISHER'S DEPOSITION**

## **Preliminary Statement**

Plaintiff/Counter-Defendant GCM Partners, LLC ("GCM") respectfully submits this Response in Opposition to Defendant Emily Arida Fisher's ("Fisher") Motion to Disqualify Jonathan Mraunac as Trial Counsel and from Taking Emily Arida Fisher's Deposition (D.E. 255 and 256) (the "Motion"). Fisher's Motion is a transparent tactical maneuver, filed in advance of Fisher's own deposition, seeking to deprive GCM of the attorney who has the deepest understanding of the facts and law in this six-year-old case. The Motion should be denied in its entirety. Disqualification of counsel is a "drastic measure which courts should hesitate to impose except when absolutely necessary." *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 721 (7th Cir. 1982). Motions to disqualify "should be viewed with extreme caution for they can be misused as techniques of harassment." *Id.* at 721. "Motions to disqualify are viewed with 'disfavor' . . . . They are often tactically motivated; they cause delay and add expense; they disrupt attorney-client relationships sometimes of long standing; in short, they tend to derail the efficient progress of litigation." *Allen v. Commissioner*, 1999 U.S. Dist. LEXIS 15543, at *1-2 (S.D. Ind. Sept. 15, 1999) (internal citations omitted). "Accordingly, the burden is on the moving party to show the facts warranting disqualification." *Hicks v. City of LaSalle*, 2026 U.S. Dist. LEXIS 53653, at *5 (Mar. 16, 2026). Fisher has not come close to meeting that burden here.

Fisher's Motion fundamentally misapplies Model Rule of Professional Conduct 3.7 ("Rule 3.7") in three respects. First, Fisher has not demonstrated that Mraunac is a "necessary witness" whose testimony is unobtainable from other sources. For example, GCM's CEO, Dr. George Gavrilos, submitted a detailed declaration in support of the Second Amended Complaint ("SAC") and can testify to many of the same facts Fisher claims only Mraunac can provide. Second, even assuming Mraunac could be called as a witness, several of Rule 3.7's exceptions apply. His anticipated testimony involves minor matters or facts not in dispute or relates to legal services

rendered in the case, and his disqualification would cause GCM substantial hardship. Third, Fisher's attempt to extend Rule 3.7 to bar Mraunac from taking her deposition finds no support in the text of the Rule, which by its terms applies only to advocacy "at a trial," or any decisional law

Fisher's belated timing — waiting six years, until after Mraunac successfully cross-examined Fisher during an evidential hearing in this matter in 2021, Mraunac was deposed and Fisher's own deposition approaches — confirms that this Motion is designed to gain a tactical advantage, not to protect the integrity of the proceedings. For the reasons set forth below, the Motion should be denied.

## **Legal Standard**

The movant bears a heavy burden on a motion to disqualify. Courts in the Seventh Circuit and the Northern District of Illinois, as elsewhere, have repeatedly emphasized the disfavored nature of such motions. As noted above, disqualification of an attorney is a "drastic measure which courts should hesitate to impose except when absolutely necessary." *Owen v. Wangerin*, 985 F.2d 312, 317 (7th Cir. 1993). "[O]rders granting disqualification requests have immediate, severe, and often irreparable and unreviewable consequences." *Freeman*, 689 F.2d at 719; *Visa U.S.A., Inc. v. First Data Corp.*, 241 F. Supp. 2d 1100, 1104 (N.D. Cal. 2003) (motions to disqualify counsel are "strongly disfavored"). This is because disqualification of counsel deprives a party of the representation of their choosing. *Id.* Thus, the movant "bears a heavy burden of proving facts required for disqualification." *Guillen v. City of Chicago*, 956 F. Supp. 1416, 1421 (N.D. Ill. 1997) (quoting *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 794 (2d Cir. 1983)). Because of the potential for abuse, disqualification motions should be subjected to "particularly strict judicial scrutiny." *Optyl Eyewear Fashion International Corp. v. Style Cos.*, 760 F.2d 1045, 1050 (9th Cir. 1985) (quoting *Rice v. Baron*, 456 F. Supp. 1361, 1370 (S.D.N.Y. 1978)).

Model Rule 3.7(a), as adopted by Local Rule 83.50 of this Court, provides that "[a] lawyer shall not act as advocate at a trial in which the lawyer is likely to be a "necessary witness" except where: "(1) the testimony relates to an uncontested issue; (2) the testimony relates to the nature and value of legal services rendered in the case; or (3) disqualification of the lawyer would work substantial hardship on the client." For the Rule to apply, the movant must demonstrate that it is "likely" that "the lawyer will be called upon to provide testimony that is relevant and material" that is "unobtainable elsewhere." *See Walton v. Diamond*, 2012 U.S. Dist. LEXIS 177805, at *7 (N.D. Ill. Dec. 14, 2012).

## **Argument**

### I. Mraunac Should Not Be Disqualified as Trial Counsel.

#### A. Mraunac Is Not a "Necessary Witness" Under Rule 3.7.

Rule 3.7 applies only where a lawyer is "likely to be a necessary witness." The word "necessary" is key: the movant must demonstrate that the attorney's testimony is not only relevant and material but is *unobtainable elsewhere*. *See Macheca Transp. Co. v. Philadelphia Indem. Ins. Co.*, 463 F.3d 827, 833 (8th Cir. 2006) (holding disqualification was an abuse of discretion where movant "not only failed to identify the things to which [the lawyer] would be the only one available to testify, but also failed to identify whether anyone would even call him as a witness"); *see also Harter v. Univ. of Indianapolis*, 5 F. Supp. 2d 657, 665 (S.D. Ind. 1998)) ("If the evidence that would be offered by having an opposing attorney testify can be elicited through other means, then the attorney is not a necessary witness."). Fisher has failed to carry this burden.

**1. Much of Mraunac's Anticipated Testimony Is Obtainable from Other Sources.**

Fisher's central premise—that Mraunac is the "only" or "primary" witness for GCM—is simply wrong. Fisher ignores the extensive testimony and evidence already available from other sources:

i. *Dr. George Gavrilos*. GCM's CEO and co-founder, Dr. Gavrilos, submitted a detailed, consisting of over 100 paragraphs, in support of the SAC (D.E. 187, Ex. 1) in which he testified at length regarding the business relationship with Fisher and Hipaaline, Fisher's conduct, the deterioration of the parties' relationship, Fisher's threats to disable GCM's platform access, and the impact of the "Switchover." Gavrilos was present at the key Zoom meetings of October 11 and October 18, 2020 with Fisher where she demanded termination and threatened to shut down access. *See* SAC ¶¶ 132–40. Gavrilos can testify about the formation of GCM, its business model, the negotiation of the Agreement, and the damages GCM has suffered. By contrast, Mraunac's declaration consists of a total of seven paragraphs, including the declaration under penalty of perjury, and is cited only once in the SAC. *See* D.E. 187 ¶ 138 (regarding the October 23, 2020 call between Mraunac and Carroll) and Ex. 3.

ii. *Jenna Kioussis.* The third GCM member, Ms. Kioussis, has knowledge of GCM's operations and can provide relevant testimony regarding the business and its dealings.

iii. *Documentary Evidence.* An extensive documentary record independently establishes the facts Fisher claims only Mraunac can provide. The Agreement itself is in evidence and speaks for itself. Emails, hearing transcripts, court filings, and declarations already in the record corroborate the events at issue. *See, e.g.*, D.E. 187 (SAC and supporting declarations); D.E. 16, 45, 85, 87 (hearing transcripts).

iv. *Fisher Herself.* Fisher has personal knowledge of many of the events at issue and can testify about her own actions and communications. Her testimony does not depend on Mraunac in any regard.

As to the specific facts Fisher identifies as requiring Mraunac's testimony, each can be established through alternative sources:

i. *The October 23, 2020 Phone Call with Martin Carroll.* Fisher treats this call as a pivotal fact in the case. *See* D.E. 256 at 3 ("[Carroll] told him that Hipaaline and Fisher intended to eliminate GCM's access to the Leafwell platform"); *id.* at 9 ("GCM's primary factual allegations . . . such as the phone conversation in which Hipaaline allegedly threatened to terminate GCM's access to the Leafwell platform"); *id.* at 10 ("key factual issues . . . . [f]or instance [that] GCM alleged that Hipaaline threatened to terminate GCM's access to the Leafwell platform on a call with Mraunac, a fact which is in dispute"); *id.* at 11 ("that Hipaaline threatened to terminate GCM's access to the Leafwell platform"). Fisher's reason for harping on this fact is obvious: Martin Carroll passed away in 2025 and cannot testify, so Mraunac is the only witness. What is less obvious is why the details of the call matter. Fisher calls this fact disputed, but her answer does not dispute the SAC's allegations about the call — she merely answers that she has "insufficient information to admit or deny" the allegations. D.E. 208: Answer, ¶ 138. Moreover, elsewhere in the answer Fisher admits that "Hipaaline indicated it would disable GCM's access to the Leafwell platform and switch payment processors." *Id.* ¶ 118. There is also no dispute that, after the Switchover, GCM's access to the platform and payment processor were terminated. *Id.* ¶¶ 151, 152, and 156. Furthermore, over the course of five hearings before this Court in early 2021, two of which were evidentiary, the October 2023 call was not discussed. Facts about this telephone call are not material.

ii. *The Drafting of the Agreement.* The Agreement speaks for itself. Its terms are in evidence and before this Court. Multiple parties, including Fisher and her then-counsel Marc Goldsand, participated in the negotiation and drafting. *See* D.E. 45 at 30:8 (Mraunac acknowledging that he and Goldsand "negotiated a draft of this agreement"). Fisher's own testimony about the drafting process is available, as is the documentary record of the negotiation. The formation of the Agreement is not at issue in this case, so neither the Agreement's drafting nor any versions preceding the final, executed version, are relevant.

iii. *Mraunac's Recommendation to Memorialize the Relationship.* Fisher claims this fact is unique to Mraunac, but it actually comes from *Dr. Gavrilos's Declaration* (D.E. 187, Ex. 1, ¶¶ 13–15), which means Gavrilos himself can testify to it. The very fact that Fisher relies upon demonstrates that the evidence is obtainable from a source other than Mraunac.

**2. Fisher Has Not Established That Mraunac Will Actually Be Called to Testify at Trial.**

Fisher assumes that Mraunac will testify at trial, but the question under Rule 3.7 is whether it is "likely" he will be "called as a witness." Many of the facts Mraunac knows are established through documents already in the record or through other witnesses. GCM has not indicated it intends to call Mraunac as a trial witness. Fisher's speculation about what *might* happen at trial is insufficient to carry her burden. *See Guillen*, 956 F. Supp. at 1425 (party seeking disqualification must carry "heavy burden"); *see also EEOC v. Bay Club Fairbanks Ranch, LLC*, 437 F. Supp. 3d 802, 805 (S.D. Cal. 2019) (courts should determine "whether counsel's testimony is, in fact, genuinely needed" before ordering disqualification).

**3. The "I Am GCM" Statement Is Taken Out of Context.**

Fisher seizes on Mraunac's colloquial remark "I am GCM" (Ex. A: Mraunac Dep. at 144:18–20) as evidence that he cannot separate his roles. In context, this was a response to a

question asking for his "personal position" versus GCM's position. Mraunac was simply explaining that, as one of three members who holds equity in GCM, his interests and GCM's interests are aligned and that his answer to the question posed would be no different than GCM's allegations in the SAC. This is entirely unremarkable for a member-manager of a closely held LLC who is also its general counsel. It says nothing about whether he is a "necessary witness" under Rule 3.7.

### B. Even If Mraunac Were a Necessary Witness, the Exceptions to Rule 3.7 Apply.

Even if Fisher could satisfy her threshold burden of establishing that Mraunac is a "necessary witness," which she cannot, Rule 3.7's three exceptions independently preclude disqualification.

#### 1. Exception #1: Much of Mraunac's Anticipated Testimony Relates to Uncontested Issues.

As noted above, the facts that Fisher insists depend on Mraunac's testimony in this case, are not in dispute. Mraunac's declaration, attached to the SAC as Exhibit 3, consists of seven paragraphs, including the declaration under penalty of perjury. D.E. 187, Ex. 3. It contains only four relevant facts: (i) Mraunac joined GCM as COO and GC on June 2020 (D.E. 187, Ex. 3 ¶ 2), a fact which is not disputed (*see* D.E. 208: Answer ¶ 36) and which is also set forth in the Gavrilos declaration (*see* D.E. 187, Ex. 1 ¶ 13); (ii) GCM and Hipaaline entered into the GCM-Hipaaline Agreement (*id.* ¶ 3), which is not contested (*see* D.E. 208, Answer ¶ 39); (iii) Mraunac became involved in the GCM-Hipaaline dispute as the relationship deteriorated and sent letters to Carroll and to Fisher (*see* D.E. 187, Ex. 3 ¶¶ 4 and 5), which is reflected in Fisher's admissions and the documentary records (*see* D.E. 208: Answer ¶¶ 90, 103, 119-124); and (iv) on October 23, 2020, Mraunac had the telephone call with Carroll where confirmed that Fisher and Hipaaline would shut down GCM Partners' access to Leafwell and Bluepay (*see* D.E. 187, Ex. 3 ¶ 6), which specific

call Fisher claims to have no knowledge of (D.E. 208: Answer, ¶ 138) but admits similar threats were indeed made to GCM at some point (*id.* ¶ 118) and that is indeed what happened after the Switchover (*id.* ¶¶ 151, 152, and 156) The Motion also leans heavily on the fact that Mraunac was the one who recommended that the parties memorialize their agreement in writing (D.E. 256 at 3 and 9), but this is not a disputed fact (*see* D.E. 187: Answer ¶ 37).[1]

**2. Exception #2: Much of Mraunac's Anticipated Testimony Relates to Legal Services.**

Fisher's characterization of Mraunac's role focuses selectively on his operational activities as COO, while ignoring that many of the actions she identifies were performed in his capacity as General Counsel. He recommended memorializing the GCM–Fisher business relationship in writing: legal advice. He participated in drafting the Agreement: legal services. He authored cease-and-desist letters to Hipaaline's counsel: legal communications. He participated in the October 23, 2020 call with opposing counsel Martin Carroll: legal communications. He prepared declarations

---

[1] Fisher also points to the objection raised by GCM's counsel to proffered testimony by Fisher at the March 1, 2021 hearing before Judge Ellis regarding how the GCM-Hipaaline Agreement was finalized and her assertion that she did not have legal representation at the time. D.E. 256 at 5 and 10. Yet Fisher fails to tell the Court that the primary basis for GCM's objection to Fisher's testimony was that it was irrelevant. D.E. 85: Mar. 1, 2021 Tr., at 52:18-20 ("We obviously do not agree at all with this version of events and find it wholly irrelevant to today's proceedings."). It was, in fact, irrelevant testimony, as the issue before Judge Ellis was not the formation of the contract but whether Fisher should be held in contempt for violating the Court's injunction. *Id.* at 41:15-21 ("The main issue here is whether I would hold Ms. Fisher in contempt or whether I would hold Online MD in contempt, and the real question is, you know, at the end of the day, GCM has been blocked from the Leafwell platform and its providers are receiving solicitations to come and work for Online MD and leave GCM and that's being done by a company whose director is Ms. Fisher."). Given the documentary evidence that Fisher and Hipaaline had counsel, Marc Goldsand, in negotiating the GCM-Hipaaline Agreement, it is unclear how this points to a relevant, contested factual issue, other than Fisher's tendency to play fast and loose with the truth. *See id.* at 61:17–62:4 ("Ms. Rich: '[W]hat I can say is right now I'm looking at the email with the final contracts that Mr. Mraunac sent to her and Mr. Goldsand is on that email and Mr. Goldsand responded with legal advice to Ms. Fisher. . . . . [I]t just goes to yet another example of Ms. Fisher not being a credible witness here.'"). There is no dispute that the parties entered into the GCM-Hipaaline Agreement.

for GCM's Complaint: legal work product. He participated in hearings in 2020 and 2021 before this Court, as counsel, and provided some background information on GCM's operations.

Comment 3 to Model Rule 3.7 expressly recognizes this exception: "Paragraph (a)(2) recognizes that where the testimony concerns the extent and value of legal services rendered in the action in which the testimony is offered, permitting the lawyers to testify avoids the need for a second trial with new counsel to resolve that issue." M.R. 3.7, Cmt. 3. Fisher dismisses this exception by asserting that Mraunac's expected testimony "would not pertain to the legal services he rendered in the case" (D.E. 256 at 11), but she ignores that much of what she identifies — *i.e.,* drafting the Agreement, communicating with opposing counsel, preparing declarations — are quintessentially legal services.

**3. Exception #3: Disqualification Would Cause GCM Substantial Hardship.**

Fisher argues that because GCM is represented by Holland & Knight attorneys, there can be no "substantial hardship" from Mraunac's disqualification. This argument ignores the realities of this case. Mraunac has been involved in this litigation from its inception, over six years. He possesses unique institutional knowledge as both COO and General Counsel of GCM. He has been intimately involved in every aspect of the litigation strategy from the filing of the original Complaint through discovery. The case is now approaching trial after more than six years of litigation. Moreover, the cost of Mraunac's services to GCM is *substantially* less than that of Holland & Knight. Requiring Holland & Knight to replicate the depth of Mraunac's knowledge and strategic understanding at this stage would impose enormous costs and delay.

This is not a case where the witness-attorney played a minimal role. *Compare EEOC v. Bay Club Fairbanks Ranch, LLC*, 437 F. Supp. 3d 802, 806 (S.D. Cal. 2019) (disqualifying attorney whose role had been "extremely limited," all pleadings signed by other firm, appeared at

ENE as client representative not counsel). In *Bay Club*, the court emphasized that the attorney-witness had such a limited role in the litigation that his disqualification "would [not] result in the duplication of litigation expenses or effort." *Id.* Here, by contrast, Mraunac has played a central role in the prosecution of this case for six years. His disqualification on the eve of trial would unquestionably impose a "substantial hardship" on GCM. When an attorney has accumulated years of case-specific knowledge and the litigation is in an advanced stage, replacing that attorney's participation imposes precisely the kind of hardship the exception was designed to prevent. *Allen v. Commissioner*, 1999 U.S. Dist. LEXIS 15543, at *1-2; *see also Freeman*, 689 F.2d at 719 (describing the disruption caused by disqualification of counsel).

**C. Fisher's Cited Cases Are Distinguishable.**

Fisher relies on a handful of cases that, upon examination, are materially distinguishable from the circumstances here.[2]

Fisher cites *Petrilli* for the Seventh Circuit's articulation of the advocate-witness rule. But *Petrilli* supports GCM's position as much as Fisher's: the court recognized that the Rule is subject to "special circumstances" and that the standard under the advocate-witness rule for precluding testimony is a discretionary one. *Id.* at 330. Fisher cites *Sicher* for the general proposition that the advocate-witness rule may warrant disqualification. But *Sicher* merely recites the standard—it does not address the factual circumstances present here, where the attorney's testimony is cumulative of other evidence, the Rule 3.7 exceptions apply, and the motion is filed after six years of litigation. And even in granting the motion, the Court made clear that "Gold is not barred from

---

[2] *See* D.E. 256 at 8-9 (citing *Petrilli v. Drechsel*, 94 F.3d 325 (7th Cir. 1996); *Bauman v. Law Off. of Cook Cnty. Pub. Def.*, 2024 U.S. Dist. LEXIS 249099 (N.D. Ill. Sep. 24, 2024); *Ewing v. 1645 West Farragut, LLC*, 2020 U.S. Dist. LEXIS 193786 (N.D. Ill. May 11, 2020); *Walton v. Diamond*, 2012 U.S. Dist. LEXIS 177805 (N.D. Ill. Dec. 14, 2012); *Sicher v. Merrill Lynch & Co.*, 2009 U.S. Dist. LEXIS 115522 (N.D. Ill. Dec. 11, 2009)).

serving as Sicher's attorney in the pre-trial matters aside from evidentiary proceedings." *Id*. at *8-*9. The court in *Sicher* expressly "decline[d] to stretch the meaning of 'evidentiary proceedings' to include depositions." *Id*. at *8.

In *Ewing*, the attorney was himself a *potential purchaser* of the property at issue in the lawsuit. His testimony went to the core transaction — whether he had agreed to buy the property. *Ewing*, 2020 U.S. Dist. LEXIS 193786, at *3–4. Here, Mraunac was not a party to the Agreement; GCM and Hipaaline were. Mraunac's role as General Counsel who helped draft the Agreement is categorically different from an attorney who was a principal to the underlying transaction. Moreover, the court in *Ewing* specifically found that the attorney's "testimony is crucial to plaintiff's claims because he" was one of "the potential purchasers of the property." *Id.* Here, multiple witnesses and an extensive documentary record cover the same facts.

In *Walton*, the attorney was *literally the only person* who could testify about why he did or did not act in a particular manner in a legal malpractice action. 2012 U.S. Dist. LEXIS 177805**,** at *6–8. The attorney's own conduct was the very subject of the lawsuit. This is a multi-party business dispute with numerous potential witnesses and an extensive documentary record. Mraunac's conduct is not at issue — Fisher's alleged scheme to strip GCM of its platform is.

In *Bauman*, the attorney had been *personally involved in a prior dispute with the defendants* and *admitted personal animosity* between himself and the deponent. *Id.* at *7–8. And even so, the court found that "[n]one of the cited rules provide a basis to disqualify [the attorney]." *Id*. at *7. Here, Mraunac's deposition comments about Fisher reflect his genuine assessment of her conduct in *the underlying dispute that is the very subject of this litigation* — not extraneous personal hostility arising from a separate prior dispute. There is a critical difference between a litigation participant's negative views of an opposing party's alleged fraudulent conduct and the kind of pre-

existing personal animosity at issue in *Bauman*. And even with that, the Court declined to disqualify the attorney in *Bauman*.

## II. Mraunac Should Not Be Disqualified from Taking Fisher's Deposition.

### A. Rule 3.7 Does Not Apply to Depositions.

By its plain text, Rule 3.7 states: "A lawyer shall not act as advocate *at a trial* in which the lawyer is likely to be a necessary witness." M.R. 3.7 (emphasis added). The Rule does not mention depositions, pre-trial proceedings, or discovery. Courts have widely recognized this textual limitation. *See, e.g., Sicher*, 2009 U.S. Dist. LEXIS 115522 (N.D. Ill. Dec. 11, 2009) (clarifying that even an attorney who is disqualified under Rule 3.7 is not barred from serving as counsel in pre-trial matters or depositions); *Mercury Vapor Proc. Techs., Inc. v. Vill. Of Riverdale*, 545 F. Supp. 2d 783, 788 (N.D. Ill. 2008) ("even if [a lawyer] later becomes a witness at trial or in an evidentiary proceeding, he is not prohibited from conducting discovery, drafting motions, or serving in some other capacity at this stage of the litigation"). Fisher's attempt to bootstrap Rule 3.7 into depositions through Federal Rule of Civil Procedure 30(c)(1) is unpersuasive. Rule 30(c)(1)'s provision that depositions "proceed as they would at trial" refers to the *manner of examination*—direct and cross-examination under the Federal Rules of Evidence—not to attorney *eligibility* rules or ethical disqualification standards. The purpose of Rule 30(c)(1) is procedural, governing the form of questioning, not who may pose the questions.

### B. Mraunac's Deposition Comments About Fisher Do Not Constitute Disqualifying "Personal Animosity."

Fisher argues that Mraunac's deposition statements—characterizing Fisher as a "terrible person," "fraudster," "greedy," "opportunistic," and a "scammer"—demonstrate disqualifying "personal animosity." This argument mischaracterizes the nature of Mraunac's statements. Mraunac's comments reflect his genuine assessment of Fisher's conduct in the *underlying dispute*

*that is the subject of this litigation*. The SAC alleges that Fisher orchestrated a fraudulent scheme to strip GCM of its platform access by placing Hipaaline into a U.K. insolvency proceeding she had pre-arranged, engineering the sale of Hipaaline's assets to Online MD (a company she solely owned and controlled), and executing a "Switchover" designed to eliminate GCM from the business. SAC ¶¶ 148–200. Mraunac's characterization of Fisher's conduct as fraudulent and opportunistic is entirely consistent with GCM's allegations in this case.

Courts recognize that strong feelings about an opposing party's alleged misconduct are different from the kind of irrational personal animosity that might warrant disqualification. Every litigant in a fraud case has negative views of the alleged fraudster. If an attorney's belief that the opposing party committed fraud were sufficient to disqualify, no attorney who genuinely believed in his client's case could ever take an opposing party's deposition. That cannot be the law.

### C. Mraunac's Statement About Fisher's Deposition Was Not a "Threat."

Fisher characterizes Mraunac's statement, "I promise you Emily's deposition is going to be different than this one. A lot." (D.E. 256, Ex. A: Mraunac Dep. at 201:20–21) as a "threat." It was not. In context, this statement is entirely consistent with a legitimate intent to conduct a thorough and effective examination of Fisher at her deposition. There is nothing improper about an attorney signaling that he intends to be well-prepared and vigorous in deposing an opposing party. Mraunac had just completed his own deposition, during which he felt Fisher's counsel was "wasting [his] time" (*id.* at 80:20–82:3). His statement that Fisher's deposition would be "different" is naturally read as expressing his intent to conduct a more focused and efficient deposition. Indeed, when Fisher's counsel asked "How so?", Mraunac asked "Are we done here? Are we off the record?" (*id.* at 201:22–25), suggesting he wanted to have a candid, off-the-record discussion about how he would conduct Fisher's deposition differently from the one he had experienced.

### D. Fisher's Authorities on Deposition Disqualification Are Distinguishable or Non-Binding.

In *Dunn v. Palmira Golf & Country Club, Inc.*, 2018 U.S. Dist. LEXIS 173911 (N.D. Ind. Oct. 9, 2018), the attorney was "one of only two occurrence witnesses to the incident which forms the basis for the complaint." *Id.* at *4. The attorney would have provided his own "testimony related to the very contested issue that is at the center of the case from a unique perspective." *Id.* Here, by contrast, multiple witnesses and voluminous documentary evidence exist, and there is no single "incident" to which Mraunac is one of only two witnesses, other than the October 23, 2020 telephone call with Carroll, the substance of which is not material to disputed issues in this case.

The concern in *Williams v. Borden Chem., Inc.*, 501 F. Supp. 2d 1219 (S.D. Iowa 2007), was specifically about deposition testimony being offered at trial, thereby "reveal[ing] [the attorney's] dual role to the fact-finder." *Id.* at 1222 n.5. Here, GCM has other attorneys — the Holland & Knight team — who can present deposition testimony at trial, eliminating the concern of fact-finder confusion.

As discussed above, *Bauman* involved qualitatively different circumstances—the attorney had been personally involved in a prior dispute with the defendants and admitted pre-existing personal animosity. The "totality of circumstances" that drove the result in *Bauman* are not present here. The Court in *Bauman* also declined to disqualify the attorney and acknowledged the number of cases cited by the defendant wherein lawyers were allowed "to participate in all other non-trial phases of the litigation." *Id*. at *8.

### E. Fisher's Motion Is a Tactical Maneuver That Should Be Denied.

The timing of Fisher's Motion confirms its true purpose: tactical advantage. Courts in this Circuit are charged by the Seventh Circuit to be alert to such maneuvers. Because motions to disqualify are frequently used as a litigation tactic, they should be closely scrutinized. *Optyl*, 760

F.2d at 1050; *see also Freeman*, 689 F.2d at 722 (disqualification is a "drastic measure" warranting "extreme caution"). The facts here speak for themselves. Fisher has known about Mraunac's dual role for the *entire six-year life* of this case. Mraunac has served as both COO/General Counsel and counsel of record since March 11, 2021 — more than five years ago. D.E. 71. Fisher never objected to his entry of appearance. She never moved to disqualify him before or during the multiple hearings in which he participated. She never raised Rule 3.7 during the years of discovery and motion practice that followed. Fisher filed the Motion only *after* Mraunac was deposed and *as Fisher's own deposition approaches*. The Motion was filed simultaneously with a Motion to Compel Further Deposition Testimony from Mraunac (D.E. 252 and 253), revealing a coordinated effort to disrupt GCM's preparation and deprive GCM of its most knowledgeable attorney at a critical juncture in the case.

The transparent goal of Fisher's Motion is twofold: (a) to prevent Mraunac, who has the deepest knowledge of the facts and the most effective ability to cross-examine Fisher (something he has already done during an evidentiary hearing before the Court in March 2021), from taking Fisher's deposition; and (b) to gain a strategic advantage by removing Mraunac from the trial team after six years of litigation. This is precisely the kind of tactical gamesmanship that the Seventh Circuit has warned against. *See Freeman*, 689 F.2d at 720. This Court should not reward it. *See, e.g., Chemical Waste Mgmt, Inc. v. Sims*, 875 F. Supp. 501, 505-06 (N.D. Ill. 1995) (finding party impliedly waived right to seek disqualification after 21-month delay and collecting cases).

**Conclusion**

For the foregoing reasons, GCM Partners, LLC respectfully requests that this Court (i) deny the Motion in its entirety and (ii) grant GCM such other and further relief as this Court deems just and proper.

Dated: September 16, 2026

Respectfully submitted,

GCM Partners, LLC

By: */s/Phillip W. Nelson*
One of Its Attorneys

Trisha M. Rich
Phillip W. Nelson
William A. Ringhofer
HOLLAND & KNIGHT LLP
150 N. Riverside Plaza, Suite 2700
Chicago, Illinois 60606
Telephone: 312.263.3600
Facsimile: 312.578.6666
Email: trisha.rich@hklaw.com
phillip.nelson@hklaw.com
william.ringhofer@hklaw.com

*Attorneys for Plaintiff/Counter-Defendant GCM Partners, LLC*

# **CERTIFICATE OF SERVICE**

I, Phillip W. Nelson, an attorney, hereby certify that on September 16, 2026, I caused a true and correct copy of the foregoing *GCM Partners, LLC's Response in Opposition to Defendant Emily Arida Fisher's Motion to Disqualify Jonathan Mraunac as Trial Counsel and from Taking Emily Arida Fisher's Deposition* to be served via the Court's CM/ECF system upon all counsel of record, including:

- Kevin M. Bergin (kevin.bergin@haynesboone.com)
- Jeffrey Alexander Butler (jeffrey.butler@haynesboone.com)
- Paul B. Lewis (paul.lewis@haynesboone.com)
- Jonathan Michael Mraunac (jmraunac@amundsendavislaw.com, docketgeneral@amundsendavislaw.com, jmraunac@gmail.com, aduenas@amundsendavislaw.com)
- Phillip W Nelson (phillip.nelson@hklaw.com, hapi@hklaw.com)
- Trisha Michelle Rich (trisha.rich@hklaw.com, jmraunac@gcmp.us, trish.balnius@hklaw.com, hapi@hklaw.com)
- William A. Ringhofer (william.ringhofer@hklaw.com, trish.balnius@hklaw.com, hapi@hklaw.com)
- Brett Walker (Brett.Walker@HaynesBoone.com)

*/s/Phillip W. Nelson*
Phillip W. Nelson