**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| GCM PARTNERS, LLC, an Illinois limited liability company, | ) | |
| Plaintiff, | ) | Case No. 1:20-cv-06401 |
| v. | ) | Hon. Georgia N. Alexakis |
| ONLINE MD LTD., a limited company of England and Wales, and EMILY ARIDA FISHER, | ) | |
| Defendants. | ) | |

**DEFENDANT EMILY ARIDA FISHER'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO DISQUALIFY JONATHAN MRAUNAC FROM DEPOSING EMILY ARIDA FISHER PURSUANT TO FED. R. CIV. P. 26(c)**

On August 25, 2026, Defendant Emily Arida Fisher ("Fisher") filed a Motion to Disqualify Jonathan Mraunac ("Mraunac") As Trial Counsel and From Taking Fisher's Deposition (the "Motion to Disqualify"). D.E. 255. Fisher sought to preclude Mraunac from deposing her due to Mraunac's dual advocate-witness role, his status as a witness with personal knowledge of the dispute, and – perhaps most saliently – his personal animosity toward Fisher and demonstrated lack of familiarity with the standard practice of depositions along with the rules governing it. See D.E. 256. After indicating that it would not rule on the motion to disqualify from trial until later (D.E. 258), on September 23, 2026, the Court determined that "the motion [to disqualify Mraunac from deposing Fisher] is better construed as a motion for protective order pursuant to Rule 26(c), seeking to protect Ms. Fisher from 'annoyance, embarrassment, oppression, or undue burden or expense'" – and it instructed the Parties to submit five-page briefs "discussing whether [the Motion to Disqualify] should be granted pursuant to Rule 26(c)" by September 28, 2026**.** See D.E. 262.

**ARGUMENT**

Under Fed. R. Civ. P. 26(c)(1), courts may grant orders to protect a party from annoyance, embarrassment, or oppression, including "order[s] that…limit [a deposition's] scope and manner" by precluding an attorney from conducting a deposition; and, a "court is not limited to the eight specified types of orders [in Fed. R. Civ. P. 26(c)(1)] and may be as inventive as the necessities of a particular case require." See D.E. 262. For example, in United States ex rel. Baltazar v. Warden, pursuant to Fed. R. Civ. P. 26(c), the United States District Court for the Northern District of Illinois ("this Court") prohibited an attorney from continuing to conduct a deposition of a witness because of that attorney's prior improper behavior; such behavior included (*inter alia*) accusing the deponent of being a liar; making inappropriate, insulting, sarcastic, and offensive remarks throughout the deposition; threatening the deponent and defending attorney, including with Rule 11 sanctions; and arguing with the party and making inappropriate comments about her answers.

302 F.R.D 256, 259-67. The Baltazar Court further noted that "'[i]t is precisely when animosity runs high that playing by the rules is vital. . . Because depositions take place in law offices rather [than] courtrooms, adherence to professional standards is vital, for the judge has no direct means of control.'" 302 F.R.D at 267 (quoting Redwood v. Dobson, 476 F.3d 462, 469 (7th Cir. 2007)). Similarly, in Bauman v. Law Off. of the Cook Cnty. Pub. DEF. (pursuant to other authority), this Court precluded an attorney from taking a witness' deposition because the attorney admitted that there was "personal animosity between himself and [the witness]."[1] 2024 U.S. Dist. LEXIS 249099, at *7-8 (N.D. Ill. Sep. 24, 2024). And in Reed v. Advocate Health Care (pursuant to other authority) this Court precluded an attorney from conducting a witness' deposition after interrupting and threatening the witness, which demonstrated that "he [was] not an appropriate person to appear for any party at a deposition." 2008 U.S. Dist. LEXIS 3561, *14-19 (N.D. Ill. Jan. 17, 2008).

Here, Mraunac's personal animosity towards Fisher was apparent throughout his deposition; and more broadly, Mraunac already exhibited every trait (discussed above) that prompted this Court to issue a protective order against the offending attorney in United States ex rel. Baltazar v. Warden, as well as (for that matter) the preclusion of an attorney from deposing a witness by the same Court in Bauman v. Law Off. of the Cook Cnty. Pub. DEF. To name a few illustrative examples of such conduct:[2] Mraunac gratuitously accused Fisher of being a "a terrible person," (D.E. 256-1, at 133:11; see also Ex. A[3] (2:15-2:17)), a "fraudster," (D.E. 256-1 at 133:7; see also Ex. A (1:58-2:02)); he stated that she "uses people [and] discards them" (and thus by

[1] In its Opposition to the Motion to Disqualify, GCM maintained that the Court "declined to disqualify" the attorney in Bauman. See D.E. 261 at 11-12, 14**.** But, insofar as the deposition disqualification is concerned, this was not accurate. Indeed, GCM failed to mention that the attorney *actually was precluded from taking the deposition of the witness in that case*. See Bauman, 2024 U.S. Dist. LEXIS 249099, at *7-8. And, as with this case, the question of trial disqualification was an issue set aside for another day. Id. at *8.

[2] Additional examples of Mraunac's improper conduct during his deposition – including insults directed at Fisher – are referenced in pages 2 through 7 of Fisher's Memorandum of Support of its Motion to Disqualify (D.E. 256), and his deposition transcript is attached to that memorandum as Exhibit A (D.E. 256-1).

[3] Exhibit A is a video of excerpts from Mraunac's deposition, which was recorded by audiovisual means.

implication stating that he was very upset with her because he felt used and discarded) (D.E. 256-1 at 133:8-9; see also Ex. A (2:06-2:09)); he stated that she is "greedy and opportunistic," (D.E. 256-1 at 141:16); and he stated that she acts like a "maniac" (id. at 137-11). And as in Baltazar, Mraunac even threatened Fisher's Counsel with Rule 11 Sanctions when Fisher's Counsel initiated the Meet-and-Confer about the motion to preclude Mraunac from deposing Fisher. See D.E. 255, at 3: Conferral Certification ("Mr. Mraunac informed Counsel for Fisher that if Fisher moved to disqualify him from taking Emily Fisher's deposition, he would move for Rule 11 Sanctions.").[4]

Further, as noted above, Mraunac clearly, and unabashedly, harbors an intense personal animosity towards Fisher. GCM offered no argument to the contrary in its Opposition to Fisher's Motion to Disqualify. See D.E. 261 at 13 ("Mraunac's characterization of Fisher's conduct as fraudulent and opportunistic is entirely consistent with GCM's allegations in this case."); see also D.E. 261 at 11 (attempting to distinguish the situation only by pointing out that the "personal hostility" at issue did not "aris[e] from a separate prior dispute"). And, given Mraunac's conduct throughout his deposition, Fisher's Counsel told Mraunac that Fisher's Counsel was "trying to keep this cordial" and that "[n]othing about this is personal to [him]" (D.E. 256-1 at 32:9-11) – which was followed by Mraunac's admission about how personal the deposition and these proceedings are to him, stating: "It's personal to the two of us [Mraunac and GCM's CEO, Dr. Gavrilos], so you can deal with the witness as I come." Id. at 32:11-13; see also Ex. A (0:40–0:52).[5]

Perhaps most notably, after declaring that he was "not coming back" for another deposition (D.E. 256-1 at 201:12), Mraunac then impliedly articulated his intention to make Fisher's

[4] Given Mraunac's on-record behavior during his deposition – undoubtedly justifying the instant good-faith request to prevent him from deposing Fisher – it comes as little surprise that Mraunac's threatened Rule 11 motion (see D.E. 255: Conferral Certification) has not arrived on this case's docket.

[5] Mraunac's personal stake in the litigation (as the former Chief Operating Officer and General Counsel for GCM) is, in part, why Fisher moved to disqualify him as trial counsel and from deposing her. See D.E. 256. His testimony – that the litigation is personal to him and Dr. Gavrilos – shows that he is more of a party/witness in this case (like Dr. Gavrilos) and not suited to depose Fisher.

deposition more unpleasant than his own, stating: "I promise you Emily [Fisher]'s deposition is going to be different than this one. A lot." D.E. 256-1 at 201:20-21; see also Ex. A (9:19-9:59). He refused to get into specifics on-record (id.), and he subsequently refused to do so off-record too.

And, as in Baltazar, Mraunac's lack of decorum was not limited to Fisher, but also her attorney – making inappropriate, insulting, sarcastic, and offensive remarks towards Fisher's Counsel. See D.E. 256-1 at 167:2 ("I'm being facetious, Brett."); id. at 80:23 ("we're bordering on wasting my time"); id. at 82:2-3; see also Ex. A (7:05-7:10) ("So, to waste my time discovering how your client's product works is a waste of my time."); D.E. 256-1 at 169:19-21 (cutting off counsel's question by stating "Oh, Jesus Christ"); id. at 173:11 ("Oh god. Same objection."); id. at 183:2-3 ("I'm not going to answer that question whether I wished anything. Ask a better one."). As described in Fisher's Memorandum in Support of her Motion to Compel (D.E. 253), Mraunac continually argued with Fisher's Counsel and inappropriately commented on his questions throughout. D.E. 256-1 at 174:11-14; see also Ex. A (5:00-5:30) (In response to a question, Mraunac stated "do you think this is like the laser pointer with the cat, you're hoping I'm just going to jump at it one of these times? What are we doing here, Brett?"); D.E. 256-1 at 157:10-16 (Fisher's Counsel told Mraunac that his refusal to answer was "difficult" because it was important question to which an answer was needed and Mraunac responded "[i]t's only difficult for you"); id. at 174:21-23; see also Ex. A (5:44-5:51) (responding to a question, "it's not like I'm going to fall for one of these, like after 90 you[‘re] going to go, I got him, this is not going to happen").

When GCM attempted to justify Mraunac's behavior in GCM's oppositions to Fisher's Motion to Disqualify and Motion to Compel, (see D.E. 260; D.E. 261), no accountability was taken; GCM instead blamed Fisher's Counsel for Mraunac's conduct. See D.E. 260 at 14 ("A large measure of responsibility for the deposition's contentiousness lies with Fisher's [C]ounsel's chosen

approach to the examination."). But the transcript is clear. Fisher's Counsel did nothing wrong.

Against this backdrop, it would seem unrealistic to expect Mraunac to do an about-face and abide by the rules during Fisher's deposition – a person that he plainly hates – when he could not even conduct himself appropriately when interacting with Fisher's Counsel who Mraunac has no reason to harbor personal animosity towards. (Though, Mraunac did indicate that he did not have "any sympathy" for Fisher's Counsel about having to deal with his behavior "because of who [Fisher's Counsel] represent[s]," D.E. 256-1 at 174:17-19; see also Ex. A (5:30-5:42).).

Thus, due to the "breakdown of decorum" at Mraunac's deposition, and his complete lack of accountability for causing that breakdown, the Court "should use 'its authority to maintain standards of civility and professionalism.'" Warden, 302 F.R.D. at 267 (quoting Redwood, 476 F.3d at 469). Specifically, the Court should preclude Mraunac from deposing Fisher to protect Fisher from annoyance, embarrassment, and oppression at her deposition. See Fed. R. Civ. P. 26(c).

As a final note, the requested protective order is also necessary due to Fisher's medical circumstances. As explained in Fisher's Motion to Extend the Discovery Deadline, she has breast cancer and is undergoing treatment in multi-week cycles. See D.E. 263.[6] Given Fisher's current physically and mentally vulnerable state, it would be inequitable to require her to endure a deposition conducted by Mraunac – someone who so cavalierly acknowledges his hatred of Fisher, who has already announced how uncomfortable he would make the deposition, and who lacked professionalism towards her Counsel during his August 6, 2026 deposition.

## CONCLUSION

For the foregoing reasons, Fisher respectfully requests that this Court enter a protective order pursuant to Rule 26(c) precluding Mraunac from deposing her.

[6] Should the Court require documentation substantiating Fisher's diagnosis, Fisher will submit that to the Court through means that do not require public disclosure of personal health-related information.

Dated: September 28, 2026

Respectfully Submitted on Behalf of Emily Arida Fisher,

_*// s // Jeffrey Butler*__________

Jeffrey Butler, Esq.
Illinois State Bar No. 6343082
Jeffrey.Butler@HaynesBoone.com
HaynesBoone LLP
1 Financial Center
Suite 2400
Boston, MA 02111

Paul Lewis, Esq.
*Admitted Pro Hac Vice*
Paul.Lewis@HaynesBoone.com
HaynesBoone LLP
1 Financial Center
Suite 2400
Boston, MA 02111

Brett Walker, Esq.
*Admitted Pro Hac Vice*
Brett.Walker@HaynesBoone.com
HaynesBoone LLP
1 Financial Center
Suite 2400
Boston, MA 02111

**CERTIFICATE OF SERVICE**

I hereby certify that, on September 28, 2026, I served the foregoing document via electronic mail on all counsel of record registered in this matter on the ECF system for the United States District Court for the Northern District of Illinois, as follows:

Trisha M. Rich
Phillip W. Nelson
William A. Ringhofer
Holland & Knight LLP
150 N. Riverside Plaza, Suite 2700
Chicago, IL 60606
Trisha.Rich@hkland.com
Phillip.Nelson@hklaw.com
William.Ringhofer@hklaw.com

Jonathan Mraunac
JMraunac@gcmp.us

By: ___*//s// Jeffrey Butler*_______
Jeffrey Butler (IL Bar No. 6343082)